S05A1229. SCANDRETT v. THE STATE.
(619 SE2d 603)

CARLEY, Justice.

The grand jury handed down two indictments against Darian Scandrett, one alleging that he committed a murder in 1997 and the other charging him with another murder committed in 2000. He filed a motion to dismiss the indictments, alleging excessive pre-trial delay in his prosecution. After conducting a hearing, the trial court denied the motion, and Scandrett appeals directly from that ruling. See *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002).

1. The right to a speedy trial is guaranteed by both the Federal and Georgia Constitutions. *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994). The test for determining whether a violation of that right has occurred is established by *Barker v. Wingo*, 407 U. S.

514 (92 SC 2182, 33 LE2d 101) (1972), which sets forth the four relevant factors to be considered: length of the delay; reason for the delay; the defendant's assertion of the right to a speedy trial; and, prejudice to the defense. *Boseman v. State*, supra at 731 (1).

(a) *Length of the delay*. The length of the delay "actually figures into the speedy trial analysis in two respects." *Boseman v. State*, supra at 732 (1) (a).

> [T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, [cit.], since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. [Cit.]

*Doggett v. United States*, 505 U. S. 647, 651-652 (II) (112 SC 2686, 120 LE2d 520) (1992). Thus, the initial determination is whether the delay in the prosecution is of such length as to demonstrate "presumptive prejudice." "If the delay passes this threshold test of 'presumptive prejudice,' then the *Barker* inquiry is triggered." *Boseman v. State*, supra at 732 (1) (a). "The delay is then considered a second time by factoring it into the prejudice prong of the *Barker* analysis, with 'the presumption that pretrial delay has prejudiced the accused intensif(ying) over time.' [Cits.]" *Boseman v. State*, supra at 732 (1) (a). A delay which approaches one year is generally deemed to be "presumptively prejudicial." *Doggett v. United States*, supra at 652 (II), fn. 1; *Boseman v. State*, supra.

The right to a speedy trial attaches "at the time of arrest or when formal charges are brought, whichever is earlier. [Cit.]" *Boseman v. State*, supra at 731 (1). Scandrett was arrested for the murders in January of 2001, and the original indictments were returned later that year. He filed the motion to dismiss in August of 2003. Thus, 31 months elapsed between the arrest, which preceded the indictments, and the assertion of the denial of the right to a speedy trial. However, Scandrett's prosecution cannot be considered as having been delayed for that entire period. The original indictments were nol prossed in May of 2002, and Scandrett was not reindicted until June of 2003. "[W]hen defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." *United States v. Loud Hawk*, 474 U. S. 302, 312 (II) (106 SC 648, 88 LE2d 640)

(1986). Thus, the 13-month period between May of 2002 and June of 2003 must be eliminated from consideration in determining the length of delay in his prosecution.

> "(W)ith no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, 'a citizen suffers no restraints on his liberty and is (no longer) the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'" [Cit.]

*United States v. Loud Hawk*, supra at 311 (II).

Thus, we will consider only the 16-month period between Scandrett's arrest in January of 2001 and the nol pros of the original indictments in May of 2002, and the two-month period between the reindictment and the assertion of the right to a speedy trial.

> [I]t may generally be said that "any delay of eight months or longer is 'presumptively prejudicial.'. . . Furthermore, there is apparent consensus that delay of less than five months is . . . insufficiently 'prejudicial' to trigger further constitutional inquiry. . . . There is judicial disagreement as to the six to seven month range, the majority holding a delay of this length 'presumptively prejudicial.' [Cits.]"

4 LaFave, Israel & King, Criminal Procedure (2d ed.), § 18.2 (b), p. 677 (1999). Accordingly, the 18-month delay in Scandrett's prosecution meets the threshold requirement of "presumptive prejudice."

(b) *Reason for the delay*. For a part of those 18 months, Scandrett was not in the custody of the State, but, instead, he was being held on federal charges. The assistant district attorney who was in charge of the prosecution stated that

> [b]asically, there was a time period of about nine months to a year that the case could not move forward because the State could not get custody . . . . [Scandrett] was in federal custody on some charges, and they would not release him to us until he either pled or something happened to those charges. But we could not get custody.

The record further reflects that from October of 2001 until March of 2002, the cases were formally dead-docketed because of Scandrett's unavailability.

In *Smith v. Hooey*, 393 U. S. 374, 383 (89 SC 575, 21 LE2d 607) (1969), the Supreme Court of the United States held that, even

though an accused is in federal custody, his constitutional right to a speedy trial is violated if he demands to be tried on a pending state charge and the prosecution thereafter fails "to make a diligent, good-faith effort to bring him before the . . . court for trial." Those circumstances are not present here. During the time that Scandrett was in federal custody, he never made any formal demand for a speedy trial on the pending Georgia charges. Moreover, the evidence shows that the State did make an effort to obtain his presence, but was not successful. Thus, "nowhere in the record does it show that the State has deliberately attempted to delay the trial in order to hamper the defense, a serious abuse that would be weighted against the State. [Cit.]" *Boseman v. State*, supra at 732 (1) (b). To the contrary, for the "nine months to a year" that Scandrett was being held in federal custody, neither his incarceration nor any other restrictions on his liberty was attributable to the pending murder indictments in Georgia.

Accordingly, of the eighteen-month period, only nine months, at most, is unexplained and must, therefore, be treated "as caused by the negligence of the State in bringing the case to trial. [Cit.]" *Boseman v. State*, supra at 733 (1) (b).

(c) *Assertion of the right to a speedy trial.* Scandrett admits that he did not formally raise either his statutory or constitutional right to a speedy trial until August of 2003, when he filed a motion to dismiss shortly after the grand jury reindicted him. "This delay in asserting his right to a speedy trial must be weighed against [him]. [Cits.]" *Boseman v. State*, supra at 733 (1) (c).

(d) *Prejudice.* Scandrett also acknowledges that he "has offered no specific evidence of any prejudice [to his defense] resulting from the delay." *Boseman v. State*, supra at 734 (1) (d). Although he claims that he experienced anxiety and concern over the pending murder charges, such a reaction

> "is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor." [Cits.] . . . [Scandrett] has not demonstrated any anxiety or concern that would balance this factor in his favor.

*Boseman v. State*, supra at 733 (1) (d). "[P]resumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, [cit.], . . . [but] its importance increases with the length of delay." *Doggett v. United States*, supra at 656 (III) (A). We conclude that the eighteen-month delay, only nine months of which was unexplained, "is insufficient by itself to raise an inference of prejudice." *Boseman v. State*, supra at 734 (1) (d).

2. Of the four *Barker* factors, impairment to the defense is "the most important prejudice component of the speedy trial equation. . . ." *Boseman v. State*, supra at 734 (2). Considering that the short delay attributable to the State did not have any demonstrable harmful effect on Scandrett's defense against the murder charges and that he himself was dilatory in formally asserting the right to a speedy trial, the trial court correctly balanced the elements of his constitutional claim and properly denied the motion to dismiss. *Boseman v. State*, supra at 734 (2).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*James D. Cooper, Jr.*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.