A05A2311. HERNDON v. THE STATE.
(626 SE2d 579)

ELLINGTON, Judge.

Robert Herndon was indicted in the Superior Court of Fulton County for the offenses of armed robbery, OCGA § 16-8-41; aggravated assault (intent to rob), OCGA § 16-5-21 (a) (1); possession of a firearm during the commission of a felony, OCGA § 16-11-106; and possession of a firearm by a convicted felon, OCGA § 16-11-131. Herndon filed a motion for discharge and acquittal, claiming a violation of his constitutional right to a speedy trial. Herndon appeals from the denial of his motion,[1] contending a delay of five years and four months between arrest and trial deprived him of a fair trial. For the following reasons, we affirm.

In this appeal, Herndon raises a constitutional speedy trial claim rather than a statutory speedy trial claim. See OCGA § 17-7-171 (statutory procedure for demanding a speedy trial). Both the Federal and Georgia Constitutions provide that an accused shall enjoy the

---

[1] See *Callaway v. State*, 275 Ga. 332, 333 (567 SE2d 13) (2002) ("a defendant may directly appeal from the pre-trial denial of either a constitutional or statutory speedy trial claim") (citations omitted).

right to a speedy trial, but delay alone does not entitle a defendant to a discharge for the denial of a speedy trial. *Scandrett v. State*, 279 Ga. 632 (1) (619 SE2d 603) (2005); *Fleming v. State*, 240 Ga. 142, 144 (1) (240 SE2d 37) (1977).

> The test for determining whether a violation of that right has occurred is established by *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which sets forth the four relevant factors to be considered: length of the delay; reason for the delay; the defendant's assertion of the right to a speedy trial; and, prejudice to the defense.

(Citation omitted.) *Scandrett v. State*, 279 Ga. at 632-633 (1). "The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal." (Citations omitted.) *Williams v. State*, 277 Ga. 598, 599 (1) (592 SE2d 848) (2004). "A trial court's findings of fact and weighing of those facts in a speedy trial claim generally are reviewed under an abuse of discretion standard." (Citation omitted.) Id. at 601 (1) (e).

The record shows the following chronology. On June 6, 1996, Herndon was sentenced to eight years on the offense of robbery by sudden snatching in Troup County ("the Troup County offense"). On September 15, 1999, Herndon was released from prison to serve the remainder of his sentence on parole. On February 23, 2000, a man wearing a ski mask robbed a woman at gunpoint in East Point, taking her paycheck and a U. S. Treasury check ("the East Point offenses"). Two days later, MARTA police officers arrested Herndon for boarding a MARTA train with a concealed weapon, in violation of OCGA § 16-12-123. In connection with the same weapons charge, Herndon was also charged with possession of a firearm by a convicted felon, OCGA § 16-11-131 (collectively "the MARTA offenses"). MARTA police officers found in Herndon's pockets some items associated with the East Point offenses, including the stolen checks. Consequently, the East Point police placed a "hold" on Herndon for those offenses, and the Board of Pardons and Paroles placed a hold on him as a parole violator.[2] On February 29, 2000, an East Point prosecutor swore out a warrant for Herndon's arrest on the East Point offenses.

On March 17, 2000, the Board of Pardons and Paroles revoked Herndon's parole, based on the MARTA offenses and the violation of

---

[2] There is no evidence Herndon was subject to a formal "detainer" as provided in Ga. Comp. R. & Regs. r. 125-2-4-.09 (Department of Corrections rule regarding the administration of detainers).

certain technical conditions of his parole. On April 25, 2000, Herndon was indicted in the Superior Court of Fulton County for the MARTA offenses. On July 14, 2000, he entered a guilty plea to the MARTA offenses and was sentenced to two years imprisonment. The following week, Herndon returned to the state prison system. Herndon completed serving that sentence on February 28, 2002 and then began serving the revoked portion of his sentence on the Troup County offense.

On October 24, 2003, Herndon was indicted in the Superior Court of Fulton County on the East Point offenses. Appointed counsel appeared and filed pretrial motions on December 23, 2003. On January 3, 2004, while he was housed in the Fulton County jail awaiting a court appearance, Herndon completed serving the revoked portion of his sentence on the Troup County offense and received a Certificate of Discharge. On March 17, 2004, Herndon filed a motion for bond, which the trial court granted two weeks later. On June 21, 2005, the trial court called the case for trial, first taking up Herndon's motion for discharge. Counsel argued that Herndon suffered a pretrial delay of more than five years, that the delay was attributable to the state, and that he was prejudiced by the delay in suffering oppressive pretrial incarceration, anxiety, and impairment of his defense. The trial court denied Herndon's motion after finding that the delay was not attributable to the prosecution although it had impaired Herndon's defense to some degree.

1. *The length of the delay.* "The right to a speedy trial attaches at the time of arrest or when formal charges are brought, whichever is earlier." (Citation and punctuation omitted.) *Scandrett v. State*, 279 Ga. at 633 (1) (a). See also *Williams v. State*, 277 Ga. at 599 (1) (a) ("The relevant time period in a speedy trial claim begins with the *earlier* of the date of indictment and the date of arrest.") (citation omitted; emphasis in original). A delay of more than one year between the attachment of the right and the trial raises a threshold presumption of prejudice and triggers consideration of the remaining *Barker v. Wingo* factors. *Doggett v. United States*, 505 U. S. 647, 652, n. 1 (112 SC 2686, 120 LE2d 520) (1992); *Williams v. State*, 277 Ga. at 601 (1); *Boseman v. State*, 263 Ga. 730, 732 (438 SE2d 626) (1994). See also *Scandrett v. State*, 279 Ga. at 634 (1) (a) (acknowledging a consensus that "any delay of eight months or longer is presumptively prejudicial") (citation and punctuation omitted).

In this case, Herndon contends he was arrested for the East Point offenses on February 25, 2000 or shortly thereafter. The State disputes that Herndon was ever formally arrested for the East Point offenses and argues, in the alternative, that Herndon was arrested at the earliest on January 3, 2004, when he completed serving his sentence on the Troup County offense but was not released due to the

hold placed on him by the East Point police. Based on this record, we must conclude that Herndon was not arrested for the East Point offenses until he was discharged from the prison system on January 3, 2004 but was not released due to the hold placed by the East Point police. Between his arrest on February 25, 2000 and January 3, 2004, Herndon was confined for the purpose of serving prison sentences for the MARTA offenses and the Troup County offense and not for the purpose of insuring his appearance at the trial on the East Point offenses. Although a prosecutor swore out an arrest warrant on the East Point offenses in February 2000, Herndon has identified no evidence in the record that the warrant was ever served on him. We find no basis for concluding that being subject to a "hold" while serving a sentence without more constitutes being placed under arrest. While the holds may have indicated that the State *would* refuse to release Herndon, when he became otherwise free to go, the holds were not the legal basis for Herndon's detention until the State actually *did* refuse to release Herndon after he became otherwise free to go, that is, when he completed his sentence on the Troup County offense on January 3, 2004.[3] See *Scandrett v. State*, 279 Ga. at 634-635 (1) (b) (while defendant was in federal custody, the restrictions on his liberty were not attributable to pending state charges).[4] Only on that date did the holds ripen into an arrest on the East Point offenses for the purposes of this analysis. Because Herndon had already been indicted on the East Point offense at that point, the relevant time period for his speedy trial claim is 20 months, from the date of indictment, October 24, 2003, through the date he was brought to trial, June 21, 2005.[5] As the State concedes, this 20-month delay

---

[3] See *State v. Carlton*, 276 Ga. 693, 695 (583 SE2d 1) (2003) (an arrest warrant which the sheriff intended "to serve as an instrument to detain" a federal prisoner did not constitute an "untried indictment, information, or complaint" under the Interstate Agreement on Detainers, OCGA § 42-6-20).

[4] See also *RaShad v. Walsh*, 300 F3d 27, 36 (III) (A) (1st Cir. 2002) ("the fact that [a defendant asserting a constitutional speedy trial claim] was in state custody prior to his indictment is of no consequence unless that detention was related to the charges on which his speedy trial claim is based"); *State v. Smith*, 699 P2d 711, 713 (Utah 1985) (where defendant's parole was revoked based on new charges of robbery and attempted burglary, his subsequent imprisonment was for the parole violation and not for the purpose of insuring his appearance at the trial on the new charges, and thus speedy trial rights on the new charges did not attach at the time of his reincarceration); *United States v. Zukowski*, 851 F2d 174, 177 (II) (A) (7th Cir. 1988) (where an escaped federal prisoner was captured, his subsequent detention was grounded in the earlier conviction and did not initiate new restraints on the defendant's liberty and thus did not constitute an arrest as to a later charge of escape; the defendant's constitutional and statutory speedy trial rights did not attach until he was indicted for the escape charge); *United States v. Stead*, 745 F2d 1170, 1173 (8th Cir. 1984) (accord).

[5] We do not address the unexplained lapse of 43 months between the issuance of an arrest warrant on the East Point offenses and the filing of the indictment (which was earlier than the date of arrest). Preindictment delay is not properly considered in the context of constitutional rights to a speedy trial but rather in the context of state and federal due process rights. See

meets the threshold requirement of presumptive prejudice. We will therefore consider the remaining *Barker v. Wingo* factors.

2. *The reason for the delay*. First, nothing in the record supports an inference "that the State has deliberately attempted to delay the trial in order to hamper the defense, a serious abuse that would be weighted against the State." *Boseman v. State*, 263 Ga. at 732 (1) (b). At the hearing on Herndon's motion for discharge, the trial court examined the docket and found that, after indictment, the case had been put on several calendars and had not been reached for trial through no fault attributable to the prosecutor. Rather, the court found the delay was due to "the press of the calendars" and a large number of cases with higher priority because of statutory speedy trial demands. Accordingly, although this factor weighs against the State, it is "relatively benign." *Perry v. Mitchell*, 253 Ga. 593, 594 (322 SE2d 273) (1984) (27-month unintentional delay).

3. *The defendant's assertion of the right to a speedy trial*. The record shows that Herndon asserted his right to a speedy trial when he filed his motion for discharge, nine months after the indictment. The trial court was authorized to find that this factor did not weigh against Herndon's speedy trial demand. Cf. *Smith v. State*, 275 Ga. 261, 263 (564 SE2d 441) (2002) (appellant's assertion of his right to a speedy trial 18 months after he was taken into custody on the underlying charge had to be weighed against him).

4. *Prejudice to the defendant*. "The interests to be considered in examining the prejudice to a defendant in a speedy trial claim include the following: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. at 600 (1) (d). "[I]n order to weight the prejudice factor in the defendant's favor, he or she must offer specific evidence that one or more of these interests apply." (Footnote omitted.) *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000). We note that the length of the delay, in addition to being considered separately, is factored into the prejudice prong of the *Barker v. Wingo* analysis, and "the presumption that pretrial delay has prejudiced the accused intensif[ies] over time." (Citation and punctuation omitted.) *Scandrett v. State*, 279 Ga. at 633 (1) (a). The presumptive prejudice arising from delay "is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett v. United States*, 505 U. S. at 656 (III) (A).

---

United States v. Lovasco, 431 U. S. 783, 788-789 (II) (97 SC 2044, 52 LE2d 752) (1977); 16C CJS, Constitutional Law, § 1018.

(a) *Preventing oppressive pretrial incarceration.* Herndon does not argue on appeal that he suffered oppressive pretrial incarceration, and the record does not support such a finding. "Our appellate courts have generally held that when a defendant is already incarcerated for unrelated offenses, there is minimal possibility of oppressive pretrial incarceration." *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005).

(b) *Minimizing anxiety and concern of the defendant.* Herndon presented no evidence that he suffered unusual anxiety and concern about the East Point offenses during the 20-month delay[6] and does not argue on appeal that he suffered prejudice on this basis.

(c) *Limiting the possibility that the defense will be impaired.* In arguing that he suffered prejudice from pretrial delay, Herndon focused on the impairment to his defense, which is "the most important prejudice component of the speedy trial equation."[7] Specifically, Herndon avers that a potential witness died and that documents were lost which would have shown that he did not live at a residence from which inculpatory evidence was seized. At the hearing on his motion, however, Herndon offered no evidence of his alleged inability to gather or preserve evidence. See *Johnson v. State*, 268 Ga. 416, 418 (2) (490 SE2d 91) (1997) ("a 21-month delay is insufficient to raise an inference of actual prejudice"; because defendant offered no evidence of specific impairment of his defense, factor weighed against defendant); *Boseman v. State*, 263 Ga. at 734 (1) (27-month delay does not raise inference of actual prejudice). Cf. *Doggett v. United States*, 505 U. S. at 654-656 (III) (A) ("extraordinary" delay of eight years between indictment and arrest excused defendant from offering "affirmative proof of particularized prejudice"); *Williams v. State*, 277 Ga. at 600-601 (1) (d) (an "extraordinary" delay of five years in bringing an indictment to trial raised a presumption of actual prejudice). In addition, Herndon did not show that the alleged death of a witness and destruction of other evidence occurred after his constitutional right to a speedy trial attached. Any prejudice Herndon suffered before the date of indictment has no bearing on his constitutional speedy trial claim. Accordingly, the record before the trial court failed to support a finding of prejudice on the basis of impairment of the defense.

Because the record shows that the 20-month pretrial delay was not attributable to the prosecution and because Herndon failed to show that he suffered any impairment to his defense during that

---

[6] See *Boseman v. State*, 263 Ga. at 733 (1) (d) ("anxiety and concern of the accused[ are] always present to some extent, and thus absent some unusual showing [this factor] is not likely to be determinative in defendant's favor") (citation and punctuation omitted).

[7] Id. at 734 (2).

period, the trial court properly ruled that Herndon could not prevail on his claim that he was denied his constitutional right to a speedy trial. *Scandrett v. State*, 279 Ga. at 636 (2); *Boseman v. State*, 263 Ga. at 734 (2).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JANUARY 25, 2006.

*Mau & Kondritzer, Kenneth D. Kondritzer*, for appellant.
*Paul L. Howard, Jr., District Attorney, Stephany J. Lewis, Assistant District Attorney*, for appellee.