## A09A2020. DITMAN v. THE STATE.
(687 SE2d 155)

BLACKBURN, Presiding Judge.

Cory Lee Ditman was arrested and indicted on one count of aggravated child molestation[1] and one count of child molestation.[2] After nearly 20 months passed without a trial, Ditman filed a motion for discharge and acquittal on the basis that the State had violated his constitutional right to a speedy trial. He appeals the order denying that motion, arguing that the trial court erred in ruling that his right to a speedy trial under the Sixth Amendment to the United States Constitution, applicable to the States via the Fourteenth Amendment, had not been violated. For the reasons set forth below, we reverse the trial court's order.

A trial court's ruling as to whether a defendant's constitutional right to a speedy trial has been violated will not be reversed absent an abuse of discretion. *Hester v. State*.[3] The deference owed the trial court's ruling is diminished, however, where it contains factual findings that are either clearly erroneous or unsupported by the record, or where it misstates or misapplies the law. Id. See also *State*

---

[27] *Goodin v. Gwinnett Health System*, 273 Ga. App. 461, 462 (1) (615 SE2d 129) (2005).

[1] OCGA § 16-6-4 (c).

[2] OCGA § 16-6-4 (a) (1).

[3] *Hester v. State*, 268 Ga. App. 94, 96 (601 SE2d 456) (2004).

*v. Stallworth*[4] (a "trial court abuses its discretion when it rules without evidence to support the ruling or contrary to law or equity").

The record in this matter shows that Ditman was arrested on October 11, 2005, on charges that he committed acts of aggravated child molestation on M. C., who was the three-year-old son of his girlfriend, Melanie Corl. He was initially held without bond, but on November 1, 2005, a bond was set in the amount of $150,000. Unable to post bond, Ditman remained in custody. On March 10, 2006, his bond was reduced to $85,000, but he was still unable to post bond and thus remained in custody. On May 4, 2006, Ditman was indicted on one count of aggravated child molestation and one count of child molestation. At Ditman's May 22, 2006 arraignment, his retained counsel filed a demand for reciprocal discovery, pursuant to OCGA § 17-16-1 et seq., and a demand for speedy trial, pursuant to OCGA § 17-7-170.

Ditman's case was placed on a trial calendar, which began on July 13, 2006, but on that date, Ditman's counsel filed a motion for continuance on several grounds, including the State's failure to comply with his discovery demands and his inability to locate Corl. A week or so later, Ditman's counsel expressed to one of the State's prosecutors his frustration with the State's failure to provide discovery and was told by that prosecutor that the discovery would be provided if the speedy trial demand was withdrawn. As a result, on July 27, 2006, Ditman's counsel filed a waiver of the statutory speedy trial demand and was provided with the requested discovery nearly one month later. However, Ditman's counsel admittedly waived the statutory speedy trial demand without Ditman's knowledge or consent. In fact, over the course of the next ten months, Ditman wrote several letters to the clerk of the superior court and to the trial court, in which he complained that his counsel had not been communicating with him and in which he inquired as to why his case had not been tried. On April 17, 2007, Ditman's retained counsel withdrew from the case. Less than one week later, Ditman filed a motion, noting that his retained counsel had withdrawn and requesting that the court appoint new counsel to represent him. On May 31, 2007, Ditman's current counsel filed an entry of appearance.

On June 6, 2007, Ditman's current counsel filed a motion for discharge and acquittal, arguing that Ditman had been deprived of his Sixth Amendment right to a speedy trial. A few days later, Ditman filed a motion for bond reduction, which resulted in a consent bond order that reduced his bond to $1,000. Consequently, Ditman posted bond and was released from custody. On April 23,

---

[4] *State v. Stallworth*, 293 Ga. App. 368 (2) (667 SE2d 147) (2008).

2008, the trial court held a hearing on Ditman's motion for discharge and acquittal, which it denied on October 17, 2008. This appeal followed.[5]

In his sole enumeration of error, Ditman contends that the trial court erred in denying his motion for discharge and acquittal based on the State's failure to provide him a speedy trial. "A speedy trial is guaranteed an accused by the Sixth Amendment to the Constitution of the United States, and also Article I of the Constitution of this State (now Art. I, Sec. I, Par. XI (a) of the 1983 Ga. Constitution)." (Punctuation omitted.) *Disharoon v. State*.[6]

> The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is laid out in the 1972 case of *Barker v. Wingo*[7] and the 1992 decision in *Doggett v. United States*.[8] . . . The analysis has two stages. First, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

*Ruffin v. State*.[9] We now turn to that analysis.

1. *Presumptive Prejudice.* "The right to a speedy trial attaches at the time of the arrest or when formal charges are brought, whichever is earlier." (Punctuation omitted.) *Scandrett v. State*.[10] "Generally, any delay approaching a year raises a threshold presumption of prejudice." *Disharoon*, supra, 288 Ga. App. at 3 (1) (a). See *Doggett*, supra, 505 U. S. at 652 (II), n. 1. Here, the delay was nearly 20 months from Ditman's arrest (October 11, 2005) to the date that he filed his motion for discharge and acquittal (June 6, 2007) and his motion for bond reduction, which resulted in his release from custody. In addition, another 16 months elapsed between the time

---

[5] The denial of a motion for discharge and acquittal, even though interlocutory in nature, may be reviewed by direct appeal. *Callaway v. State*, 275 Ga. 332, 333 (567 SE2d 13) (2002).

[6] *Disharoon v. State*, 288 Ga. App. 1, 3 (1) (652 SE2d 902) (2007).

[7] *Barker v. Wingo*, 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972).

[8] *Doggett v. United States*, 505 U. S. 647, 651 (II) (112 SC 2686, 120 LE2d 520) (1992).

[9] *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

[10] *Scandrett v. State*, 279 Ga. 632, 633 (1) (a) (619 SE2d 603) (2005).

Ditman's motion was filed and the time the trial court ruled upon it. Thus, the total delay was approximately 36 months. See *Ruffin*, supra, 284 Ga. at 55 (2) (a) (holding that pretrial delay included the time it took the trial court to decide the defendant's motion to dismiss the indictment for an alleged speedy trial violation). Accordingly, "this case long ago crossed the presumptive prejudice threshold . . . [and] we must proceed to the second stage of the constitutional speedy trial analysis." Id.

2. *Barker-Doggett Balancing Test.* As stated by the United States Supreme Court, the four factors that form the core of the constitutional speedy trial balancing test are: "[i] whether delay before trial was uncommonly long, [ii] whether the government or the criminal defendant is more to blame for that delay, [iii] whether, in due course, the defendant asserted [the] right to a speedy trial, and [iv] whether he suffered prejudice as the delay's result." *Doggett*, supra, 505 U. S. at 651 (II). See also *Barker*, supra, 407 U. S. at 530 (IV). "No one factor is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." (Punctuation omitted.) *Ruffin*, supra, 284 Ga. at 55 (2) (b). "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Harris v. State*.[11] "Thus, the second stage of the constitutional speedy trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis." (Punctuation omitted.) *Ruffin*, supra, 284 Ga. at 56 (2) (b).

(a) *Whether the delay was uncommonly long.*

> The length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice. However, it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis.

*Ruffin*, supra, 284 Ga. at 56 (2) (b) (i). As previously noted, the 36-month "pretrial delay in this case far exceeds the one-year benchmark for presumptive prejudice." Id. Thus, this factor is weighed against the State. See *Herndon v. State*[12] (20-month delay weighed against State under *Barker-Doggett* analysis); *Ruffin*, supra, 284 Ga. at 57-59 (2) (b) (i) (delay of over 26 months weighed against State under *Barker-Doggett* analysis).

(b) *Reasons and responsibility for the delay.* The second factor in

---

[11] *Harris v. State*, 284 Ga. 455, 455 (667 SE2d 361) (2008).
[12] *Herndon v. State*, 277 Ga. App. 374, 377 (1) (626 SE2d 579) (2006).

the *Barker-Doggett* analysis requires the court to examine both "the reason for the delay and whether this is attributable to the defendant or the state." (Punctuation omitted.) *State v. Johnson*.[13] Here, the trial court found that any delay attributable to the State was, at most, negligent and that Ditman also caused delay by filing pretrial motions and by changing counsel. Although the trial court did not specify how it ultimately weighed these factors, it appears that it found the parties equally responsible for the delay. To the extent that it did so, the trial court erred. First, the trial court's finding that Ditman's change of counsel caused delay is not supported by the record given the fact that Ditman did not change counsel until over 18 months had elapsed since his arrest. Furthermore, the only motion filed by Ditman that could be viewed as directly causing delay was the motion for a continuance, which was filed because the State had failed to provide Ditman's counsel with discovery. By contrast, twenty-three months out of the thirty-six-month delay were directly attributable to the State in light of the fact that it took seven months to indict Ditman following his arrest and sixteen months for the trial court to rule on his motion for discharge and acquittal. Thus, further analysis of this factor turns on the State's reasons for the delay and how heavily those reasons should weigh against the State.

"[T]he reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors." *Ruffin*, supra, 284 Ga. at 59 (2) (b) (ii). The United States Supreme Court has recognized that the reasons for State-induced delay fall along a spectrum. See *Doggett*, supra, 505 U. S. at 656-657 (III) (B).

> On one end of the spectrum is delay resulting from, or in spite of, the State's diligent prosecution of the case. Such delay could result from the complexity of the case, the need for additional investigation or discovery, or the government's inability to locate a key witness, despite good faith efforts to do so.

*Hayes v. State*.[14] See *Hassel v. State*.[15] This kind of delay will rarely support a speedy trial claim. See *Doggett*, supra, 505 U. S. at 656 (III) (B).

> On the opposite end of the spectrum is deliberate delay to gain an improper advantage over the accused, including

---

[13] *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001).
[14] *Hayes v. State*, 298 Ga. App. 338, 342 (2) (b) (680 SE2d 182) (2009).
[15] *Hassel v. State*, 284 Ga. 861, 862 (b) (672 SE2d 627) (2009).

delays designed to hamper a defendant's ability to mount a successful defense, to harass the defendant, or to coerce him or her into testifying against a co-defendant or otherwise turning state's evidence.

(Punctuation omitted.) *Hayes*, supra, 298 Ga. App. at 342 (2) (b). See *West v. State*.[16] "The heavy weight afforded this type of delay will virtually always result in a dismissal of the case against the defendant, because it strikes at the very heart of the speedy trial guarantee." (Punctuation omitted.) *Hayes*, supra, 298 Ga. App. at 342 (2) (b).

"[H]owever, . . . the delay in the vast majority of cases results from some type of official neglect." *Hayes*, supra, 298 Ga. App. at 342 (2) (b). As the *Doggett* Court explained,

[b]etween diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Doggett*, supra, 505 U. S. at 656-657 (III) (B).

Here, the trial court found that the State "made no deliberate action to delay the conclusion of this case" and thus considered the delay caused by the State to be benign. However, in doing so, the trial court ignored Ditman's former counsel's undisputed testimony that the State was slow to comply with his discovery requests, which caused him to seek a continuance several months after Ditman was indicted. The court also ignored the fact that the State only fully complied with those requests after former counsel agreed to withdraw the statutory speedy trial demand. At oral argument, the State did not dispute or explain its demand that defendant waive his right to a speedy trial in order to receive his statutorily provided discovery rights. Such intentional misconduct deprives the defendant of his due process rights under the state and federal constitutions. "[D]elays resulting from deliberate decisions made by the State, strategic or otherwise, cannot be considered benign and must be weighted more heavily against the State." *Hayes*, supra, 298 Ga. App. at 344 (2) (b). See *Jackson v. State*[17] (rejecting the State's argument that pretrial delay resulting from State's goal to try all co-defendants together was "benign," and thus was entitled to little weight, simply

---

[16] *West v. State*, 295 Ga. App. 15, 17 (B) (2), n. 4 (670 SE2d 833) (2008).

[17] *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000).

because it was not designed to prejudice the defense).

In addition, the court makes no mention of the fact that after Ditman's former counsel filed the motion for continuance, the case still languished with little action taken by the State for the next ten months, until Ditman's current counsel filed the motion for discharge and acquittal and afterward languished for another sixteen months. Again, even if this collective conduct by the State is characterized as negligent rather than intentional, "the trial court erred in assuming that all government negligence in failing to prosecute must be viewed as benign, and therefore entitled to only de minimis weight against the government." *Hayes*, supra, 298 Ga. App. at 344 (2) (b). Indeed,

> [o]ur cases reflect that negligence is entitled to minimal weight against the State only where it results either from the prosecution's inadvertent neglect of the case or from solely administrative factors over which the prosecution has no control, such as overcrowded court dockets or under-staffed law enforcement agencies.

Id. See *Hassel*, supra, 284 Ga. at 862 (b); *Johnson*, supra, 274 Ga. at 512-513 (2). Thus, in this case, it is the State and not the criminal defendant who is more to blame for the delay. See *Ruffin*, supra, 284 Ga. at 62 (2) (b) (ii); *Hayes*, supra, 298 Ga. App. at 345 (2) (b). Accordingly, the trial court erred in failing to weigh this factor against the State.

(c) *Timeliness of defendant's assertion of his right to a speedy trial.* It is well established that "the filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds." *Hester*, supra, 268 Ga. App. at 99 (3). However, a defendant who fails to assert the right to a speedy trial at any point in the trial court will have an extremely difficult time establishing a violation of this constitutional right. *Barker*, supra, 407 U. S. at 532 (IV). "In order to invoke the right, the accused need not file a formal motion, though that is certainly sufficient." *Ruffin*, supra, 284 Ga. at 62-63 (2) (b) (iii). "The relevant question for the purposes of the third *Barker-Doggett* factor is whether the accused has asserted the right to a speedy trial 'in due course.' " Id. at 63 (2) (b) (iii). See *Doggett*, supra, 505 U. S. at 651 (II).

Here, Ditman filed a statutory demand for a speedy trial seven months after he was arrested but less than one month after he was indicted. Nearly two months later, his former counsel filed a motion withdrawing that demand. Approximately one year later, his current counsel filed a motion for discharge and acquittal, contending that

Ditman's constitutional right to speedy trial had been violated. In its order denying Ditman's motion for discharge and acquittal, the trial court found that Ditman's former counsel made a strategic decision to withdraw the speedy trial demand and therefore weighed this factor against Ditman.

Ditman argues that the withdrawal of the speedy trial demand was done without his consent or knowledge and therefore that his letters to the clerk of the superior court and to the trial court, in which he inquired as to why his case had not been tried, demonstrate that he continued to assert his right to a speedy trial. However,

> [t]his Court has repeatedly held that a pro se demand for a speedy trial filed while a criminal defendant is represented by counsel "was of no legal effect whatsoever." The Sixth Amendment right does not afford the defendant the hybrid right to simultaneously represent himself and be represented by counsel.

(Citation and punctuation omitted.) *Wallace v. State.*[18] See *Daniels v. State;*[19] *Goodwin v. State.*[20] Ditman's pro se letters to the clerk and to the trial court therefore do not constitute a viable demand for a speedy trial. Thus, "although [Ditman's] initial assertions of his statutory rights to a speedy trial militate in his favor, his ultimate withdrawal of those demands and subsequent delay in asserting his constitutional right to a speedy trial should be weighed against him." *Robinson v. State.*[21] See *Williams v. State.*[22] Nevertheless, given that another 16 months elapsed between the filing of the motion for discharge and acquittal on speedy trial grounds and the trial court's decision on that motion, this factor could not be weighed heavily against Ditman. See *Hester,* supra, 268 Ga. App. at 99 (3).

(d) *Prejudice to the defendant.* "The test for whether a defendant has been prejudiced requires the court to consider three interests: preventing oppressive pretrial incarceration, minimizing a defendant's anxiety and concern, and limiting the possibility that the defense will be impaired." *Beasley v. State.*[23] "The most important component of the prejudice analysis is whether the defendant's

---

[18] *Wallace v. State,* 288 Ga. App. 480, 481 (654 SE2d 442) (2007).
[19] *Daniels v. State,* 235 Ga. App. 296, 298 (2) (509 SE2d 368) (1998).
[20] *Goodwin v. State,* 202 Ga. App. 655, 656 (415 SE2d 472) (1992).
[21] *Robinson v. State,* 298 Ga. App. 164, 167-168 (1) (b) (iii) (679 SE2d 383) (2009).
[22] *Williams v. State,* 279 Ga. 106, 109 (1) (c) (610 SE2d 32) (2005).
[23] *Beasley v. State,* 260 Ga. App. 74, 76 (d) (579 SE2d 19) (2003).

ability to raise a defense was impaired by the delay." *Nusser v. State.*[24] See *Bass v. State.*[25]

In this matter, the trial court found that Ditman's 20-month pretrial incarceration was not oppressive, that Ditman had not demonstrated that he experienced significant anxiety or concern as a result of his incarceration, and that his defense had not been impaired by the delay of his trial. Although Ditman's pretrial incarceration was substantial, we agree that Ditman offered no evidence of "sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." (Punctuation omitted.) *Jackson*, supra, 272 Ga. at 785. See *Robinson*, supra, 298 Ga. App. at 168 (1) (b) (iv); *Disharoon*, supra, 288 Ga. App. at 5 (1) (d). As for anxiety and concern, "it is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor." (Punctuation omitted.) *Christian v. State.*[26] See *Robinson*, supra, 298 Ga. App. at 168 (1) (b) (iv). Ditman has made no such showing. Thus, there is no evidence that the delay caused him significant anxiety and concern beyond that generally experienced by defendants in his situation. See *Christian*, supra, 281 Ga. at 477 (2).

With regard to the impairment of his defense, Ditman argues that because of the substantial pretrial delay, he is now unable to locate Corl and thus has lost the testimony of a material witness. To carry his burden of showing prejudice due to the unavailability of a witness, Ditman must show that the missing witness could supply material evidence for the defense. *State v. Allgood.*[27] At the hearing on his motion for discharge and acquittal, Ditman's former counsel testified that he had met with Corl in late 2006. During that meeting, Corl told former counsel that while she had custody of her son, M. C. had never disclosed to her that he was being sexually abused and that she never saw any physical signs or other indications that M. C. was being abused by Ditman. Former counsel also testified that Corl could corroborate Ditman's claim that he was not around M. C. for some of the time during which the indictment alleges M. C. was molested. At the hearing, Ditman also had a sheriff's deputy testify that there was an outstanding arrest warrant for Corl due to a probation violation but that the sheriff's department had not been

---

[24] *Nusser v. State*, 275 Ga. App. 896, 900 (622 SE2d 105) (2005).
[25] *Bass v. State*, 275 Ga. App. 259, 261 (4) (620 SE2d 184) (2005).
[26] *Christian v. State*, 281 Ga. 474, 477 (2) (640 SE2d 21) (2007).
[27] *State v. Allgood*, 252 Ga. App. 638, 640 (4) (556 SE2d 857) (2001).

able to locate her and had no knowledge regarding her current whereabouts.

Despite this testimony, the trial court rejected Ditman's prejudice claim, finding that the State had provided Ditman with updated contact information for Corl and that Ditman's claim that Corl's testimony would help his defense was speculative at best. We disagree. The only evidence that the State had provided Ditman with updated contact information for Corl was a comment made by the State's prosecutor during the hearing on Ditman's motion, in which he stated that he had received a telephone message from a woman who identified herself as "Melanie Reed" but whom he believed to be Corl and that he had given the woman's telephone number to defense counsel *the day before the current hearing*. The State's prosecutor also admitted that he had not been able to talk to the woman when he attempted to return her phone call and, more importantly, that he was not certain that the woman was, in fact, Corl. Thus, the trial court's finding that Ditman now possessed Corl's contact information was speculative and not supported by the record.

Furthermore, the trial court erred in concluding that Ditman's characterization of Corl as a "loose cannon" meant that the loss of Corl as a witness did not impair Ditman's defense. Although the testimony that Ditman claimed Corl would have provided would not have completely exculpated Ditman, it would have lent credence to his claim that although he was around M. C. at times during his relationship with Corl, he did not sexually abuse the child. See *Jones v. State*[28] (finding that accused's defense was prejudiced by loss of witness who would have supported accused's claim that she was not involved in illegal activity despite presence at scene); *Hardeman v. State*[29] (same). In this matter, where the credibility of witnesses would have played a pivotal role, "[i]t is inconceivable that this evidence would have not been material." *Hardeman*, supra, 280 Ga. App. at 171 (4). "It follows that the delay deprived [Ditman] of the potential benefit of this witness." (Punctuation omitted.) *Jones*, supra, 283 Ga. App. at 842 (4). "Prejudice has therefore been shown from the delay in this case." Id. See *Hardeman*, supra, 280 Ga. App. at 171 (4).

(e) *Balancing of the four factors*. A balancing of the four factors in the *Barker-Doggett* analysis shows that three are weighted in Ditman's favor and one — the assertion of the right to a speedy trial — weighs against him. Even with respect to the one negative factor,

---

[28] *Jones v. State*, 283 Ga. App. 838, 842 (4) (642 SE2d 865) (2007).

[29] *Hardeman v. State*, 280 Ga. App. 168, 171 (4) (633 SE2d 595) (2006).

the record shows Ditman initially asserted his right to a speedy trial shortly after he was indicted and that although his former counsel later withdrew that demand, Ditman was unaware of this action and would not have agreed with it. In addition, the undisputed testimony was that former counsel withdrew that demand after the State's prosecutor suggested that he do so in order to allow the State to meet its discovery obligations. Furthermore, after Ditman's current counsel re-asserted Ditman's right to speedy trial, the case did not proceed expeditiously. Rather, 16 additional months passed before the trial court ruled upon Ditman's speedy trial claim. Although the trial court did not err in weighing this factor against Ditman, we cannot agree that it counterbalances other factors, especially the prejudice caused by losing the testimony of a material witness. See *Hardeman*, supra, 280 Ga. App. at 172 (5).

Moreover, this Court has found a deprivation of the right to speedy trial even in cases where the right was not asserted for a long period of time. See, e.g., *Jones*, supra, 283 Ga. App. at 842 (4) (trial court abused its discretion in denying motion for discharge and acquittal even though right not asserted until three years after arrest); *Hardeman*, supra, 280 Ga. App. at 171-172 (5) (trial court abused its discretion in denying motion for discharge and acquittal even though right not asserted until 18 months after arrest); *Allgood*, supra, 252 Ga. App. at 640 (3) (no abuse of discretion in granting motion to dismiss on speedy trial grounds despite right not being asserted for almost four years after arrest). Accordingly, we conclude that Ditman was denied his constitutional right to a speedy trial and to due process based on the State's intentional act of trading discovery responses for a speedy trial right, and thus the trial court abused its discretion in denying his motion for discharge and acquittal. See *State v. Redding*;[30] *Jones*, supra, 283 Ga. App. at 842 (4); *Hardeman*, supra, 280 Ga. App. at 172 (5). Cf. *Allgood*, supra, 252 Ga. App. at 641 (4).

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED NOVEMBER 19, 2009 — 

*Timothy B. Lumpkin*, for appellant.

*Patrick H. Head, District Attorney, Allen R. Knox, John R. Edwards, Assistant District Attorneys, Marc D. Cella*, for appellee.

---

[30] *State v. Redding*, 274 Ga. 831, 834 (561 SE2d 79) (2002).