A10A2208. HOWARD v. THE STATE.
(706 SE2d 163)

BLACKWELL, Judge.

J. B. Howard was indicted in December 2006 for a violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, OCGA § 16-14-1 et seq., based on allegations that he was involved in a conspiracy to pass forged checks. More than three years later, he filed a plea in bar, asserting that he had been denied his constitutional right to a speedy trial and seeking a dismissal of the indictment. The trial court denied the plea in bar, and Howard brought this appeal. We see no error and affirm.

On December 1, 2006, a grand jury in Douglas County returned an indictment charging Howard and 11 other defendants with acquiring and maintaining property through a pattern of racketeering activity in violation of OCGA § 16-14-4 (a). The indictment alleged 20 distinct predicate acts of forgery as the basis for the charge. All these predicate acts involved the passing of forged checks at banks located in Douglas County, and all were alleged to have occurred in August and September 2006.

Howard was not arrested immediately for the crime charged in the indictment. Although the record does not reveal precisely what was done by Douglas County authorities to locate and apprehend Howard upon the return of the indictment, it does reflect that Howard was moving his residence between two homeless shelters in Atlanta in late 2006 and that Howard did not live at the address then appearing on his driver's license. On March 23, 2007, Howard was

---

[17] Supra, 541 U. S. at 68-69 (V) (C). See *Lindsey v. State*, 282 Ga. 447, 452 (4) (651 SE2d 66) (2007).

arrested in Clayton County on an unrelated charge, and he was transferred to Douglas County in April, at which time he finally was arrested for the crime charged in the indictment. There is nothing in the record to suggest that Douglas County authorities knew or should have known of his whereabouts prior to his arrest in Clayton County in March 2007.

After his arrest in Douglas County, a lawyer was appointed to represent Howard, and this lawyer entered an appearance on his behalf in May 2007. Howard waived arraignment in June, and his case appeared on trial calendars in August and October. His lawyer announced "not ready" at the call of both calendars.[1] On October 30, his lawyer filed a motion to reduce bond because Howard had been unable to post a sufficient bond and had been in jail since his arrest. On November 1, the trial court ordered that Howard be released on a signature bond, and Howard was released from jail soon thereafter.

By the time Howard was released from jail in November 2007, eight of his eleven co-defendants had entered guilty pleas and had been sentenced. The next month, a ninth co-defendant entered a guilty plea and was sentenced. But following this plea, it appears that nothing significant happened with the case for about a year. There is no record of any hearings in the case or any substantive filings in 2008, and there is no clear explanation in the record for this period of inactivity. Whatever the reason, there is nothing in the record that suggests the State intentionally delayed the proceedings in an effort to prejudice Howard or for any other improper reason.

In November 2008, the prosecuting attorney to whom Howard's case then was assigned was elected as a judge of the superior court to succeed the judge to whom the case then was assigned. When this prosecuting attorney assumed judicial office in January 2009, he promptly recused from Howard's case, and the case was assigned to another prosecuting attorney and another judge. Proceedings in the case resumed soon thereafter, and in April and May, the tenth and eleventh co-defendants entered guilty pleas and were sentenced.

With respect to Howard, his case reappeared on a trial calendar in August 2009. Although his lawyer announced "ready" at the call of this calendar, the case was not reached in August. It appeared again on a trial calendar in September, but this time, his lawyer apparently was unavailable. In December, the trial court entered an order permitting Howard's original lawyer to withdraw from the case, and a new lawyer was appointed to represent Howard. The new

---

[1] We do not know why his lawyer was not then ready for trial. The record does reflect, however, that the State had provided his lawyer with discovery before the first of these trial calendars.

YALE LAW LIBRARY

lawyer entered an appearance on his behalf on December 18 and filed several additional demands for discovery. Nothing was said in any of these filings about the right to a speedy trial.

On February 3, 2010, the new lawyer filed a plea in bar, asserting that Howard had been denied his constitutional right to a speedy trial. The case appeared on an April trial calendar, at which time the trial court apparently intended to address the plea in bar, but Howard failed to appear for the call of the calendar, and a bench warrant for his arrest was issued. After Howard was apprehended on the bench warrant, the trial court held an evidentiary hearing on May 5 and denied the plea in bar in a ruling from the bench, finding that Howard failed to timely assert his right to a speedy trial and that Howard suffered no prejudice as a result of the delay in bringing him to trial. The trial court entered a written order denying the plea in bar on June 7, 2010. Howard appeals from the denial of his plea in bar.[2]

1. In *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972) and *Doggett v. United States*, 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992), the United States Supreme Court set out the principles that guide us when we consider whether the delay in bringing a defendant to trial amounts to a denial of his constitutional right to a speedy trial.[3] Some delay is inevitable, of course, so we first consider whether the delay is long enough to warrant a more searching judicial inquiry. See *Doggett*, 505 U. S. at 651-652 (II); see also *Barker*, 407 U. S. at 530-531 (III). The right to a speedy trial attaches at the time of arrest or formal accusation or indictment, whichever occurs first, and we measure the delay from the time the right attaches. *Scandrett v. State*, 279 Ga. 632, 633 (1) (a) (619 SE2d 603) (2005). Most courts have said that a delay approaching one year is sufficient in most cases to warrant a more searching inquiry. See *Doggett*, 505 U. S. at 652, n. 1 (II); but see *Barker*, 407 U. S. at 530-531 (IV) ("[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."). In this case, approximately 42 months elapsed between the return of the indictment and the entry of the order denying the plea in bar. We think a more searching inquiry is warranted here, and the State does not contend otherwise.

---

[2] A direct appeal properly may be taken from the denial of a plea in bar based on an assertion that the defendant has been denied his constitutional right to a speedy trial. *Callaway v. State*, 275 Ga. 332, 333 (567 SE2d 13) (2002).

[3] The principles set out in *Barker* and *Doggett* apply equally to a claimed denial of the right to a speedy trial under the United States Constitution and a claimed denial of the same right under the Georgia Constitution. *Redd v. State*, 261 Ga. 300, 301, n. 1 (404 SE2d 264) (1991). Howard asserts his right to a speedy trial under both the United States and Georgia Constitutions.

2. When a more searching inquiry is warranted, the United States Supreme Court has explained that a court should consider "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett*, 505 U. S. at 651 (II); see also *Barker*, 407 U. S. at 530-533 (IV). Of these factors, no one is dispositive. Instead, a court must weigh all four factors, along with any other relevant circumstances, in "a difficult and sensitive balancing process." *Barker*, 407 U. S. at 533 (IV). We now proceed to consider and weigh these factors.

(a) We consider first whether the delay in this case was uncommonly long. Howard was indicted in December 2006, and the order denying his plea in bar was entered about three-and-a-half years later. The State concedes that this delay was uncommonly long, and we agree. Nevertheless, we recognize that a prosecution like this one — involving 12 defendants, a continuing criminal enterprise, and 20 predicate acts — might justifiably require more time than a prosecution involving a lone defendant or an isolated incident. Accordingly, we weigh the length of the delay against the State, see *State v. Gleaton*, 288 Ga. 373 (703 SE2d 642) (2010) (delay approaching four years properly weighed against State), but the significance of this factor is tempered by our recognition that a longer delay may be justified in a complex case like this one than in more typical cases. See *Barker*, 407 U. S. at 531 (IV) ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

(b) We next consider who is more to blame for the delay. Our consideration of this factor not only requires us to decide whether Howard or the State bears responsibility for the various circumstances that contributed to the delay, but it also requires us to examine the reasons for the delay. *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001). As the United States Supreme Court has explained, "different weights should be assigned to different reasons." *Barker*, 407 U. S. at 531 (IV). For instance:

Deliberate delay to hamper the defense weighs heavily against the prosecution. More neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

In contrast, delay caused by the defense weighs against the defendant: If delay is attributable to the defendant, then

his waiver may be given effect under standard waiver doctrine. That rule accords with the reality that defendants may have incentives to employ delay as a defense tactic: delay may work to the accused's advantage because witnesses may become unavailable or their memories may fade over time.

*Vermont v. Brillon*, 556 U. S. 81 (II) (129 SC 1283, 173 LE2d 231) (2009) (citations and punctuation omitted).

In this case, Howard and the State each are responsible for some of the circumstances that caused the delay. The record shows that the case appeared on at least five trial calendars, but Howard's lawyer announced "not ready" at the call of two calendars, his lawyer was unavailable for trial on another calendar, and Howard himself failed to appear for the call of yet another calendar. Moreover, the record suggests that, when a new lawyer was appointed in December 2009 to represent Howard, the new lawyer served demands for discovery that, at least to some extent, duplicated the demands for discovery that the original lawyer had served and to which the State already had responded. In light of these circumstances, Howard is responsible for at least some of the delay.[4] See *Vermont*, 129 SC at 1290 (II) (because attorney is defendant's agent when acting, or failing to act, in furtherance of litigation, delay caused by defendant's attorney is charged against defendant).

Although Howard bears some responsibility for the delay in this case, the State is more to blame. There is nothing in the record to suggest that anything of substance happened in this case for more than a year. The record does not reflect any proceedings or substantive filings between December 2007 and April 2009.[5] For most of this period of delay — between December 2007 and January 2009 — the record contains no explanation at all,[6] and this delay is chargeable to the State. With respect to the delay between January and April 2009,

---

[4] We also note that Howard moved to sever his trial from that of his co-defendants. When a defendant moves to sever, he ought to know that, if his motion is granted, the multiplication of proceedings may cause some additional delay. In this case, the trial court never ruled upon the motion to sever because it was rendered moot by the entry of guilty pleas by all of the co-defendants.

[5] The record on appeal reveals one filing during this period: a request for a short leave of absence by Howard's attorney. There is no indication, however, that this request caused any proceedings to be rescheduled or delayed.

[6] The record does reflect that the prosecutor to whom the case was assigned in 2008 was involved in prosecuting a death penalty case. Although we recognize that a death penalty case requires significant time, there is no indication in the record of the extent to which the death penalty prosecution contributed to a delay of this case. In any event, delay occasioned by overworked prosecutors is chargeable to the State. See *Teasley v. State*, 307 Ga. App. 153 (2) (b) (704 SE2d 248) (2010) (unintentional delays caused by overcrowded court dockets and overworked prosecutors are weighed against State).

the record reveals that the prosecutor to whom the case had been assigned was elected to succeed the judge to whom the case had been assigned, requiring the reassignment of the case to a new prosecutor and judge. Even this circumstance, however, is the responsibility of the State. See *Brooks v. State*, 304 Ga. App. 281, 283 (b) (696 SE2d 110) (2010); *Kramer v. State*, 287 Ga. App. 796, 798 (1) (652 SE2d 843) (2007). In addition, after activity resumed in the case in April 2009, there is no explanation for why Howard was not tried at that time or in August, when his lawyer announced "ready" at the call of the trial calendar, and this delay too is chargeable to the State. We must conclude, therefore, that the State is to blame for the preponderance of the delay.

Nevertheless, there is no evidence that any of this delay was deliberate or part of an effort to prejudice Howard. Instead, it appears that the delay for which the State is responsible was the result of, at most, mere negligence. In fact, at the hearing on the plea in bar, Howard's counsel conceded as much: "I don't have any evidence that this was intentional by the State, but . . . this is a case that just fell through the cracks." Because Howard himself is to blame for a significant portion of the delay, and because the delay for which the State is responsible does not appear to have been deliberate, we weigh this factor against the State lightly. See *Sweatman v. State*, 287 Ga. 872, 874-875 (4) (700 SE2d 579) (2010).

(c) We consider now whether Howard timely asserted his right to a speedy trial. It is the responsibility of the defendant to assert his right to a speedy trial, and his failure to do so in a timely manner weighs strongly against him. *Frazier v. State*, 277 Ga. App. 881, 882 (c) (627 SE2d 894) (2006). Indeed, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U. S. at 532 (IV). This factor weighs especially strongly against a defendant where he has been represented by counsel since soon after his arrest but does not assert his right to a speedy trial until just before trial. *Ferguson v. State*, 303 Ga. App. 341, 344 (2) (c) (693 SE2d 578) (2010).

Howard never filed a demand asserting his statutory right to a speedy trial under OCGA § 17-7-170, and he properly raised his constitutional right to a speedy trial for the first time in his plea in bar, which was filed more than three years after he was indicted. Nevertheless, Howard says that we should find he asserted his right to a speedy trial at a much earlier time, inasmuch as he filed pro se several papers referencing his right to a speedy trial in late 2007. But Howard was represented by counsel at the time he filed these papers, and

> [t]his Court has repeatedly held that a pro se demand for a speedy trial filed while a criminal defendant is represented

by counsel "was of no legal effect whatsoever." The Sixth Amendment right does not afford the defendant the hybrid right to simultaneously represent himself and be represented by counsel.

*Wallace v. State*, 288 Ga. App. 480, 481 (654 SE2d 442) (2007) (citation and punctuation omitted); see also *Bowling v. State*, 285 Ga. 43, 45 (1) (c), n. 3 (673 SE2d 194) (2009). Accordingly, the third factor — the timely assertion of the right to a speedy trial — weighs heavily against Howard. See *Brown v. State*, 287 Ga. 892 (1) (c) (700 SE2d 407) (2010) (in review of trial court's denial of plea in bar based on alleged violation of constitutional right to speedy trial, defendant's failure to timely assert demand for speedy trial weighs heavily against him).

(d) Finally, we consider whether Howard actually was prejudiced by the delay, with an eye toward the three interests that the right to a speedy trial is intended to protect: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and, most importantly, limiting the possibility that the defense will be impaired." *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001). Howard was incarcerated as a result of this case for about seven months, but he has offered no evidence that this incarceration involved "sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." *Jackson v. State*, 272 Ga. 782, 785 (534 SE2d 796) (2000) (punctuation omitted). Thus, he has not shown that his pretrial incarceration alone constituted prejudice. Id.

Howard contends that having this case pending for so long caused him great anxiety and concern. Specifically, he argues that he was unable to secure a loan because of the pending charges and that this caused him a significant amount of anxiety. But the only evidence offered by Howard that these charges, in fact, prevented the approval of his loan was hearsay and, therefore, of no probative value. See *Taylor v. State*, 298 Ga. App. 145, 147 (2) (b) (679 SE2d 371) (2009). Moreover, Howard could have mitigated any anxiety and concern by asserting his right to a speedy trial, but for more than three years following his indictment, he did not. See *Lambert v. State*, 302 Ga. App. 573, 577 (4) (692 SE2d 15) (2010). Finally, while the trial court may have been entitled to weigh the prejudice factor slightly in Howard's favor in light of his testimony, given the lack of evidence that he suffered any unusual anxiety and concern, the trial court was not required to do so. *State v. Reid*, 298 Ga. App. 235, 241 (2) (b) (iv) (679 SE2d 802) (2009) (trial court did not err in finding defendant's testimony that charges impaired his ability to obtain job was insufficient to weigh this factor in defendant's favor).

YALE LAW LIBRARY

Howard also contends that the pretrial delay has impaired his defense because he cannot locate two witnesses. "To prove prejudice due to the unavailability of these witnesses, [Howard] must show that the unavailable witnesses could supply material evidence for the defense." *Robinson v. State*, 298 Ga. App. 164, 168 (1) (b) (iv) (679 SE2d 383) (2009) (citation and punctuation omitted). In particular, Howard claims that because of the delay, he cannot locate the unknown man who asked him to cash the forged check or the woman, whom he knew only as "Big Girl," who introduced Howard to the man. But Howard presented no evidence that he ever could have located either of these witnesses or that either of them would have provided information material to his defense. See *Lynch v. State*, 300 Ga. App. 723, 725 (1) (d) (686 SE2d 268) (2009). Indeed, based on Howard's own testimony, the trial court properly found that these two witnesses would have done nothing but confirm Howard's participation in the crime charged. Because Howard's inability to locate the two witnesses demonstrates no actual prejudice to his defense, the fourth *Barker-Doggett* factor is weighed against him. See *Ferguson*, 303 Ga. App. at 346 (2) (d).

(e) We now balance each of the *Barker-Doggett* factors, noting that none of the individual factors is a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Ruffin v. State*, 284 Ga. 52, 55 (2) (b) (663 SE2d 189) (2008). We do not condone the considerable delay in bringing Howard's case to trial, and we are especially concerned by the year of apparent inactivity in his case. Nevertheless, Howard's belated assertion of his constitutional right to a speedy trial weighs heavily against him, and to a lesser extent, so does his failure to show prejudice in light of such delay. Considering all these factors, we conclude that the trial court did not err in denying Howard's plea in bar. See *Falagian v. State*, 300 Ga. App. 187, 190 (1) (e) (684 SE2d 340) (2009); see also *Sweatman*, 287 Ga. at 876 (6) (after balancing other factors, delay of nearly five years did not violate defendant's constitutional right to a speedy trial).

For these reasons, we affirm the denial of the plea in bar.
*Judgment affirmed. Barnes, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 11, 2011.

*James K. Luttrell*, for appellant.

*David McDade, District Attorney, Benjamin Von Schuch, James A. Dooley, Assistant District Attorneys*, for appellee.