A11A1203. BILLINGSLEA v. THE STATE.
(716 SE2d 555)

BARNES, Presiding Judge.

Derrick Billingslea appeals the trial court's denial of his motion to dismiss four counts of armed robbery against him for an alleged violation of his right to due process because he was not arrested until more than six years after the crime. For the reasons that follow, we affirm.

In October 2002, four women at a beauty salon were robbed at gunpoint by two men, one of whom was wearing a mask. An arrest warrant was issued for Billingslea in November 2002. Billingslea was arrested for the crime in January 2009, and was indicted on four counts of armed robbery and released on bond in February 2009. In April 2009 his public defender made an entry of appearance and filed numerous motions. The State served Billingslea with discovery shortly afterward and with supplemental discovery in October 2009. Meanwhile, in September 2009, Billingslea filed a motion to suppress the victims' identification of him through a photographic lineup, which the trial court denied in April 2010 following oral argument. In August 2010, Billingslea filed a notice of alibi as to the date and time of the offense. Upon Billingslea's request, on October 22, 2010, the trial court ordered the East Point Police Department to deliver the latent prints lifted from the crime scene and the comparison prints taken from Billingslea to the Georgia Bureau of Investigation ("GBI") Crime Lab by October 26, 2010, and ordered the Crime Lab to complete the comparison of the prints by October 29, 2010.

In November 2010, Billingslea filed a motion to dismiss and plea in bar asking the court to issue an order discharging and acquitting him of the armed robbery charges. He argued that the six-and-a-half-year delay between the arrest warrant in November 2002 and his arrest in January 2009 violated his right to due process and a speedy trial. The court heard argument on the motion in December 2010.

At the motion hearing, the investigating police officer testified that he had investigated a reported armed robbery of four victims by two gunmen at a beauty salon in October 2002. Two of the victims identified Billingslea from a photographic lineup as one of the robbers, and the officer obtained a warrant for Billingslea's arrest in November 2002, which was entered in the Georgia Crime Information Center ("GCIC") database and maintained at the police department's information office. The officer testified that he unsuccessfully attempted to locate Billingslea through his girlfriend (now wife) and his mother in January 2003, but then had no more active leads to follow.

A technician lifted latent fingerprints from the front door and desk at the crime scene, which were submitted to the GBI Crime Lab with comparison prints of two victims and Billingslea, which the police department had on file from an unrelated arrest in November 2002. The crime lab reported that, while the latent prints were of value for comparison purposes, the other three sets of comparison prints were not, and asked the department to submit new ones from all three subjects. The investigating officer made arrangements for the victims to come to the police station so he could obtain new comparison prints but they did not show up. Due to the heavy caseload and the loss of an officer, the last entry he made in the file was in January 2003, although he spoke to one of the victims about coming in after Billingslea was arrested in 2009.

The original investigating officer was promoted, and a different detective was assigned to follow up on obtaining new fingerprint comparisons in January 2009. A police department evidence technician who had received the latent prints back from the crime lab in July 2007 testified that the new detective had checked out the latent prints in January 2009, presumably to take them to the crime lab. When the technician was asked to locate the prints in October 2010, they were missing, and the detective who had checked them out no longer worked for the police department.

Billingslea also argued that a witness was missing due to the passage of time. The robbers took the victims' cell phones, and someone made a call from one victim's phone a few hours after the robbery. The original detective interviewed the person who received that call, who said she did not know Billingslea. The person showed the detective a picture of her son, and the detective ascertained he was not Billingslea. At the hearing, Billingslea's investigator testified that he had gone to the address listed for the person who had received the call and left business cards but no one ever responded. He also checked with the apartment building's leasing office and that person was not listed on any leases in the apartment building, discovered that the phone number in the police report had been

assigned to someone else, and searched for the witness in Lexis/Nexis and other search engines.

Billingslea testified that he had lived in several locations since 2002, alternately with his wife or his mother, and spent about a year at a rehabilitation facility for his marijuana addiction. He did not know a warrant was out for his arrest on these charges, even though the police at one point had stopped him and reviewed his identification.

The trial court denied Billingslea's motion to dismiss and plea in bar in January 2011, and Billingslea appealed. He argues that the trial court erred in denying his motion because the lengthy passage of time between the crime and his arrest and indictment violated his right to due process. He asserts that the delay substantially prejudiced his ability to defend himself because the police had lost the set of latent fingerprints taken from the crime scene and a witness "crucial to the defense" had disappeared. He also contends that the State deliberately delayed his arrest to gain a tactical advantage.

1. Both the United States and Georgia Constitutions grant defendants in criminal cases a right to a speedy trial, U. S. Const. Amend. VI; 1983 Ga. Const. Art. I, Sec. I, Par. XI (a), and a delay *following* arrest or indictment may violate that right. *Brewington v. State*, 288 Ga. 520, 521 (1), (2) (705 SE2d 660) (2011). But different considerations apply when the delay occurs *before* an arrest or indictment.

> The Sixth Amendment does not guarantee a right to a speedy arrest. However, an inordinate delay between the time a crime is committed and the time a defendant is arrested or indicted may violate due process guarantees under the Fifth and Fourteenth Amendments. To find a due process violation where a delay precedes arrest and indictment, courts must find 1) that the delay caused actual prejudice to the defense, and 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage.

(Citations and emphasis omitted.) *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993) (no due process violation from delay between 1978 murder and preliminary hearing and 1990 indictment because no prejudice to defense or intent to gain tactical advantage). Both elements — actual prejudice and deliberate delay to gain a tactical advantage — must be established to find a due process violation. *Jackson v. State*, 279 Ga. 449, 451 (2) (614 SE2d 781) (2005) (no actual prejudice and thus no due process denial despite 24-year lapse between murder and indictment). In this case, Billingslea has

established neither element.

2. Billingslea contends that his defense was prejudiced by the delay of more than six years between the crime and his arrest because during that time the latent prints from the crime scene were lost and a witness "crucial to the defense" could no longer be located.

> Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case.

*United States v. Marion*, 404 U. S. 307, 321 (92 SC 455, 30 LE2d 468) (1971).

"[T]he applicable statute of limitations is the primary guarantee against bringing overly stale criminal charges." (Citation and punctuation omitted.) *Marion* at 321-322. In this case, Billingslea was arrested and indicted for armed robbery, a noncapital felony, within the applicable seven-year statute of limitation. OCGA §§ 16-8-41 (a), 17-3-1 (c). The seven-year statute of limitation establishes our legislature's "assessment[ ] of relative interests of the State and the defendant in administering and receiving justice," and protects defendants from being tried for offenses "when the basic facts may have become obscured by the passage of time." Id. at 322-323.

In this case, Billingslea cannot show actual prejudice due to the passage of time. As to the missing fingerprint evidence, at worst, a match between the latent fingerprints and Billingslea's fingerprints would have inculpated him. At best, as the trial court noted, a failure to match the prints would have been neutral to both the defense and the State, because it proved neither Billingslea's presence nor his absence. While Billingslea argues that the latent prints might have established "the real perpetrator" if they had matched the prints of another offender in the government's database, the mere existence of this possibility does not establish actual prejudice. *State v. Madden*, 242 Ga. 637, 638 (250 SE2d 484) (1978) (defendant's speculation that if indicted sooner he might have been able to establish an alibi insufficient to show actual prejudice). Further, the absence of the prints for comparison purposes does not affect Billingslea's alibi defense, and would "hinder[ ] the prosecution as much as [the] defendant." *Holton v. State*, 280 Ga. 843, 845 (2) (632 SE2d 90) (2006) (no prejudice to defense from 20-year gap between arrest and indictment, despite missing evidence and death of several witnesses).

Billingslea similarly has not established that the absence of the witness would substantially prejudice his defense. The witness, who denied knowing Billingslea, simply owned the account associated with that telephone number at that time, a number that someone called from a victim's stolen cell phone two hours after the robbery. "To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." (Citation and punctuation omitted.) *State v. Madden*, 242 Ga. at 637. The circumstances in this case do not rise to a denial of due process that would warrant dismissing the indictment.

As Billingslea failed to show that his defense was prejudiced by the delay between the commission of the crime in 2002 and his arrest in 2009, the trial court did not abuse its discretion in denying his motion to dismiss.

3. As Billingslea must show both that his defense was prejudiced and the State deliberately delayed his arrest to obtain a tactical advantage to establish a due process violation, his failure to satisfy the first element "obviates any need to consider the reasons for the delay." *Jackson*, 279 Ga. at 451 (2). We note, however, that in arguing that the State deliberately delayed arresting him to gain a tactical advantage, Billingslea mischaracterizes the detective's testimony at the motion hearing. The detective did not testify that he deliberately delayed arresting Billingslea to gain a tactical advantage. After testifying that once an arrest warrant was entered into the GCIC computer, it remained there until the arrestee was located, the detective was asked if he had decided not to pursue Billingslea because he thought the evidence against him was insufficient. The detective replied, "I felt that there was minimal probable cause. But again I wanted to strengthen my case and the only way I could be able to strengthen my case was with him." The detective then explained that the warrant was not executed for more than six years because he was unable to locate Billingslea and had no active leads. In other words, the detective did not testify that he delayed the arrest to strengthen the State's case; he testified that he delayed the arrest because he could not find Billingslea, and that finding him would strengthen the case.

To obtain a dismissal, an accused must show "both of the elements of a viable claim for violating his due process rights, and [Billingslea] showed neither." *Jones v. State*, 284 Ga. 320, 322 (1) (667 SE2d 49) (2008) (four-year delay between murder and indictment did not violate due process because no prejudice to defendant or attempt to gain tactical advantage). Accordingly, the trial court did not err in denying Billingslea's motion to dismiss the indictment

for a violation of his right to due process based on the delay between the crime and his arrest.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED AUGUST 24, 2011.

*Angela B. Clarke*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lenny I. Krick, Assistant District Attorney*, for appellee.