### A11A2220. JOHNSON v. THE STATE.
#### (723 SE2d 100)

DILLARD, Judge.

Ricky J. Johnson was indicted on one count of burglary and four counts of theft by taking. Thereafter, Johnson filed a motion to dismiss/plea in bar to these charges, alleging that his Sixth Amendment right to a speedy trial had been violated. The trial court denied Johnson's motion, and this appeal follows, in which Johnson contends that the court erred in its analysis of the required *Barker*[1] factors. For the reasons set forth infra, we vacate the trial court's order and remand for reconsideration.

The record shows that Johnson was arrested on November 8, 2007, and was thereafter appointed indigent-defense counsel on November 21, 2007. Johnson's first attorney, Parker McFarland,[2] quickly realized that he had also been appointed to represent Johnson's co-defendant and informed Johnson upon his initial visitation that he would be unable to serve as his counsel.[3]

Thereafter, on November 30, 2007, Johnson signed (and presumably mailed) a pro se demand for a constitutional speedy trial, which was filed by the clerk of court on December 6, 2007. Also on

---

[1] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[2] Because Johnson has been appointed five different attorneys, we will refer to them by name in an effort to avoid any confusion.

[3] A Certificate of Initial Visitation filed with the trial court on December 12, 2007, reflects conflicting information regarding the date of this visit. According to Johnson, the visit occurred on November 23, 2007, but McFarland indicated that the visit occurred on November 28, 2007. We note that the record does not contain a notice of withdrawal by McFarland. Instead, McFarland's withdrawal is memorialized through an explanation by Johnson's counsel at the motion-to-dismiss hearing and, to some extent, by Johnson's testimony. Nevertheless, the State does not dispute the general timing or circumstances of McFarland's withdrawal.

November 30, 2007, the indigent-defense administrator for Forsyth County appointed Gregg Schuder to represent Johnson.[4] And while the appointment form was not filed with the clerk of court until December 5, 2007, Schuder signed an entry of appearance on December 3, which was then filed with the court on December 4. Schuder thereafter filed a number of motions on Johnson's behalf, but he did not file a speedy-trial demand.

On January 9, 2008, after spending approximately two months in jail on the charges relevant to the case sub judice, Johnson was granted a bond. Nevertheless, he remained incarcerated on other charges. And between February 2008 and October 2008, the record before us is more or less silent.[5] But on October 30, 2008, Schuder filed a request to withdraw as Johnson's counsel, which did not indicate any reason for making such a request. Then, on January 5, 2009, Johnson was indicted on the above-referenced charges. And 11 days later, on January 16, 2009, the trial court granted Schuder's request to withdraw as counsel. The order gave no indication as to why Schuder withdrew from his representation of Johnson.

Nearly two months passed before Kelly Turner was appointed to represent Johnson on March 11, 2009. Johnson's case was then placed on the trial calendar for June, but on July 1, 2009, the trial court granted a motion made by Johnson to extend the time for filing motions. On July 13, 2009, Johnson—while still represented by Turner—filed a pro se demand for a speedy trial pursuant to OCGA § 17-7-170 and the Georgia and United States Constitutions. The case was then placed on trial calendars for August, September, October, and December in 2009 and January in 2010, with Turner filing various discovery-related motions on Johnson's behalf between the scheduled trial dates.

But on December 28, 2009, Turner filed a motion to withdraw as counsel, citing an "impassible conflict" and Johnson's belief that she was "working in concert with the District Attorney's Office to prosecute him." The trial court granted Turner's request to withdraw on January 15, 2010,[6] and Johnson's case was then continued until the February 2010 trial calendar.

In late January, attorney Rex McClinton was appointed to represent Johnson. The case was then placed on the trial calendars for April, May, and June 2010. But due to conflicts in his schedule,

---

[4] We note that "Reappointment" was inexplicably handwritten at the top of this form, over the title "Appointment of Counsel."

[5] The record reflects two notices of arraignment and a bondsman surrender during this period, but it does not reflect any motions filed by Schuder or any other documents.

[6] Although the trial court held a hearing on Turner's motion to withdraw, the record before us does not contain a transcript from this hearing.

McClinton was unable to go to trial in June, and on July 8, 2010, Johnson filed his motion to dismiss/plea in bar, alleging a violation of his right to a constitutional speedy trial. The case was then placed on the trial calendars for August and September 2010.

On September 24, 2010, the trial court denied Johnson's motion to dismiss, and Johnson timely filed a notice of appeal with the trial court in October.[7] In March 2011, Johnson's current counsel was appointed after McClinton unexpectedly passed away. This appeal follows.[8]

On appeal, Johnson contends that the trial court erred in (1) denying his motion to dismiss when the delay in bringing him to trial was presumptively prejudicial; (2) finding that the delay was primarily caused by Johnson's difficulty with his appointed counsels; (3) finding that Johnson failed to assert his right to a speedy trial; and (4) finding that Johnson did not suffer prejudice by the delay.

At the outset, we note that pursuant to *Barker v. Wingo*[9] and *Doggett v. United States*,[10] there are two stages to a trial court's analysis when considering a criminal defendant's motion to dismiss on the basis of a constitutional speedy trial violation. First, the court must determine whether the delay between arrest, indictment, or other formal accusation and trial is presumptively prejudicial.[11] If the delay is presumptively prejudicial, the court must then proceed to the second step, "which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether

---

[7] Even after Johnson filed his notice of appeal, the trial court continued to place his case on trial calendars for January, February, May, and June 2011. In July 2011, Johnson wrote to the clerk of the superior court to inquire as to the status of his appeal after learning that the record had not been transmitted to this Court. We remind the trial court that "pre-trial orders denying a constitutional speedy trial claim are directly appealable." *Callaway v. State*, 275 Ga. 332, 332 (567 SE2d 13) (2002). And in a criminal case, "the filing of a notice of appeal . . . deprives the trial court of its 'power to execute the sentence.'" *Waters v. State*, 174 Ga. App. 438, 439 (1) (330 SE2d 177) (1985).

[8] We pause to note that although the State provided citations to the record in its brief, the State's record citations are unhelpful as they do not correspond to the record before this Court, and in some instances, the State cites to documents and/or transcripts that are not in the record before us. We remind the State that "this Court will not cull the record on a party's behalf." *Potts v. State*, 296 Ga. App. 242, 246 (3) (c) (674 SE2d 109) (2009); *see Bernoudy v. State*, 245 Ga. App. 489, 491 n.2 (3) (538 SE2d 150) (2000) ("[O]ur rules require appellants and appellees to provide citations to material parts of the record or transcript."); *see also* Court of Appeals Rule 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration.").

[9] 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972)

[10] 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992).

[11] *State v. Thaxton*, 311 Ga. App. 260, 262 (715 SE2d 480) (2011); *see also Doggett*, 505 U. S. at 651-52 (II) (holding that the first factor in the *Barker* inquiry "is actually a double enquiry" because "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay").

the accused has been deprived of the right to a speedy trial."[12] The four factors in this second step of the *Barker* analysis are whether (1) the pretrial delay was excessively long; (2) the defendant or State is primarily responsible for the delay; (3) the defendant timely asserted the right to a speedy trial; and (4) the defendant suffered prejudice as a result of the delay.[13]

When the trial court balances the foregoing factors, "[n]o one factor is necessary or sufficient to sustain a finding that the right to a speedy trial has been denied," and the factors should instead be considered together in balancing the conduct of the defendant and the State.[14] And on appeal, "we review the trial court's weighing of each *Barker* factor and its balancing of all four factors only for abuse of discretion."[15] But when the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, "the deference owed the trial court's ultimate ruling is diminished."[16] And here, the trial court made several errors in its application of the *Barker* framework to Johnson's speedy-trial claim, which requires that we vacate and remand the case for proper consideration.[17] We will address each of the factors—and Johnson's enumerations of error—in turn.

1. *Step One: Presumptive Prejudice.* As a threshold inquiry, the trial court must consider whether the delay in bringing the accused to trial is presumptively prejudicial.[18] If the delay is not presumptively prejudicial, "the speedy trial claim fails at the threshold."[19] But if the delay is indeed presumptively prejudicial, "the court must proceed to the second step of the *Barker*-[*D*]*oggett* analysis . . . ."[20]

To calculate the length of the delay when the defendant has not been brought to trial, the trial court must look "from the date of arrest or other formal accusation to the date on which a defendant's

---

[12] *Thaxton*, 311 Ga. App. at 262 (punctuation omitted); *see also Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

[13] *Thaxton*, 311 Ga. App. at 262; *see also Ruffin*, 284 Ga. at 55-56 (2) (b).

[14] *Thaxton*, 311 Ga. App. at 262.

[15] *Id.* at 262-63.

[16] *Id.* at 263 (punctuation omitted); *see also Ditman v. State*, 301 Ga. App. 187, 187 (687 SE2d 155) (2009) ("The deference owed the trial court's ruling is diminished . . . [when] it contains factual findings that are either clearly erroneous or unsupported by the record, or [when] it misstates or misapplies the law.").

[17] *See Thaxton*, 311 Ga. App. at 263. *See generally State v. Porter*, 288 Ga. 524, 524-25 (705 SE2d 636) (2011) ("[B]ecause the trial court clearly erred in key factual findings and failed to enter a proper order balancing the relevant legal factors, the Court of Appeals should have vacated the trial court's judgment and remanded for the trial court to exercise its discretion again based on the correct facts and law.").

[18] *See Thaxton*, 311 Ga. App. at 263 (1).

[19] *Ruffin*, 284 Ga. at 55 (2).

[20] *Id.*

speedy trial motion was granted or denied."[21] This is because the constitutional right to a speedy trial attaches when the defendant is arrested or when formal charges are initiated—whichever occurs first.[22] And in general, a delay exceeding one year is presumptively prejudicial.[23]

Using this calculation, the delay between Johnson's arrest on November 8, 2007, and the denial of his speedy trial motion on September 24, 2010, was approximately 35 months—well over one year. And while the trial court incorrectly determined that the delay in this case amounted to approximately 33 months, it nevertheless properly concluded that the delay was presumptively prejudicial and continued its analysis.

2. *Step Two: The Four* Barker *Factors.* Initially, we note that the factors emphasized in *Barker* and *Doggett* do not constitute an exhaustive list, "have no talismanic qualities," and "must be considered together with such other circumstances as may be relevant given the animating principles behind the speedy trial guarantee."[24] With these guiding (and contextual) principles in mind, we will now turn to the four factors common to all constitutionally based speedy-trial claims.

(a) *Whether the Delay Before Trial was Uncommonly Long.* While the length of delay "plays a role in the threshold determination of presumptive prejudice," it is also considered "as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis."[25] And in line with well-established precedent from the Supreme Court of the United States, our own Supreme Court has cautioned that "[i]t is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage . . . ."[26]

---

[21] *Thaxton*, 311 Ga. App. at 263 (1).

[22] *Id.*

[23] *Id.* at 264 (1).

[24] *Ruffin*, 284 Ga. at 55, 56 (2) (b) (punctuation omitted).

[25] *Id.* at 56 (2) (b) (i) (further holding that although lengthy pretrial delay cannot alone support a finding that a defendant's constitutional right to a speedy trial has been violated, it is "part of the mix of relevant facts, and its importance increases with the length of delay" (punctuation omitted)).

[26] *Id.* at 56-57 (2) (b) (i) (further holding that because "the presumption that pretrial delay has prejudiced the accused intensifies over time," an uncommonly long or excessive pretrial delay "merits consideration beyond its use as a liminal screening mechanism" (punctuation omitted)); *see also Doggett*, 505 U. S. at 652 (II) ("If the accused makes [a showing of presumptive prejudice], the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.").

Here, the trial court's order reflects that the court conflated its consideration of the length of delay in the threshold inquiry with its consideration of the first *Barker* factor, which was clearly in error.[27] Indeed, the trial court's finding in this regard was limited to a statement that the delay was approximately thirty-three months and that delays approaching one year are presumptively prejudicial. Accordingly, the trial court on remand must assess whether the delay in Johnson's case—the calculation of which should be made as explained supra—was uncommonly long and/or excessive, keeping in mind that "[a] delay is considered uncommonly long under the test to the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."[28] The court must then consider the weight of this factor.[29]

(b) *Reason and Responsibility for the Delay*. This second factor requires a trial court "to examine both the reason for the delay and whether the delay was attributable to the defendant or to the State."[30] And because some amount of pretrial delay is unavoidable, "the reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors."[31]

In this regard, "[d]eliberate delay to gain an improper advantage over the accused strikes at the very heart of the speedy trial guarantee and is thus 'weighted heavily against the government' in the *Barker-Doggett* balancing process."[32] But at the opposite end of the spectrum are "situations where it is the defendant who requested or otherwise engineered the delay . . . ."[33] Nevertheless, most reasons for delay are pedestrian and remain neutral in the

---

[27] *See State v. Reimers*, 310 Ga. App. 887, 889 (2) (a) (714 SE2d 417) (2011) ("The trial court's complete failure to consider the length of the delay in balancing the *Barker* factors was error.").

[28] *Thaxton*, 311 Ga. App. at 264 (2) (a) (punctuation omitted).

[29] *See, e.g., id.* (holding that "[t]o the extent that the majority of the delay occasioned . . . was attributed to the pre-indictment delay, such delay was significant in the analysis of this factor," which was presumably weighed against the State); *Grizzard v. State*, 301 Ga. App. 613, 615 (2) (a) (688 SE2d 402) (2009) (trial court properly weighed delay of eight years in bringing a defendant to trial against the State when State conceded that delay was uncommonly long).

[30] *Thaxton*, 311 Ga. App. at 265 (2) (b).

[31] *Ruffin*, 284 Ga. at 59 (2) (b) (ii); *see also Barker*, 407 U. S. at 522 n.15 (II) ("In large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." (punctuation omitted)).

[32] *Ruffin*, 284 Ga. at 59 (2) (b) (ii).

[33] *Id.* (providing, as examples, a defendant "going on the lam to avoid prosecution, filing a series of frivolous pretrial motions, or securing the unavailability of a critical prosecution witness").

balancing process;[34] however, some common reasons for delay must be weighed against the State.[35] For example,

> overcrowded dockets, the government's failure to provide for sufficient numbers of judges, prosecutors, or indigent defense counsel, neglect by the prosecution or other government agents, mere convenience of the prosecution, or the desire to avoid the expense of separate trials for two defendants involved in the same crime[[36]]

would all weigh against the State, although "less heavily than delay designed to sabotage the accused's case."[37] Finally, when there is no apparent reason for a delay, "we must treat the delay as caused by the negligence of the State in bringing the case to trial."[38]

In denying Johnson's motion to dismiss, the trial court determined that the delay was caused primarily by Johnson's "difficult behavior and the legitimate actions taken by his attorneys." The court then referred to Johnson's attorneys having filed "multiple motions, including a Motion to Extend Time For Filing Motions" and "additional motions [by Ms. Turner] throughout 2009," and a motion "to hire a fingerprint expert." Finally, the court noted that the case "has appeared on multiple trial calendars, but the readiness of the case for trial has been affected, at least in part, by counsel's conflicts and a leave of absence." Presumably, the trial court weighed this factor against Johnson.

The trial court's analysis, however, failed to discuss Johnson's first attorney, Parker McFarland, or Johnson's second attorney, Gregg Schuder, whose representation accounts for the period between late 2007 and early 2009.[39] The court also neglected to consider the State's delay in indicting Johnson or any other portion of the delay which might otherwise be attributable to the State.[40]

---

[34] *See id.* at 59-60 (2) (b) (ii) (recognizing inherent delays caused by State's need to track down critical witnesses and the time that must be afforded to trial and appellate courts to consider motions and appeals in a "just and thoughtful manner").

[35] *Id.* at 60 (2) (b) (ii).

[36] *Id.*

[37] *Id.*; *see also id.* at 61 (2) (b) (ii) (holding that "the government" is not limited to the prosecution and instead encompasses all state actors, including judges and indigent defense).

[38] *Id.* at 61 (2) (b) (ii) (punctuation omitted).

[39] *See Simmons v. State*, 304 Ga. App. 39, 42 (2) (b) (696 SE2d 75) (2010) ("Any failure of the indigent defense system to represent its clients is directly or indirectly the responsibility of the State and the trial court to oversee the functioning of the criminal justice system." (punctuation omitted)).

[40] *See Ditman*, 301 Ga. App. at 191 (2) (b) (holding that further analysis of factor "turn[ed] on the State's reasons for the delay and how heavily those reasons should weigh against the State" when defendant was not indicted until seven months after arrest).

Furthermore, with regard to the motions filed by Turner, Johnson testified that discovery-related motions were filed because the State had not yet turned over all evidence—a contention that also merited consideration by the trial court.[41] On remand, the trial court must reconsider the reasons for delay and whether Johnson or the State is responsible for the various and sundry contributing factors.[42]

In remanding for reconsideration, we note that although the State argued before the trial court that Attorney Schuder withdrew due to having conflicts with Johnson, the State did not present evidence of any alleged conflicts. Indeed, Johnson testified that he did not have problems with Schuder. But the State urged the trial court to review the transcripts from various calendar calls, alleging that these would demonstrate why Schuder withdrew. However, no such transcripts appear in the record before us, we do not have a transcript from any hearing on Schuder's motion to withdraw,[43] and neither Schuder's motion nor the trial court's order permitting withdrawal gives any indication as to the circumstances surrounding the request to withdraw.

Additionally, we note that when questioning Johnson during the motion-to-dismiss hearing, the State made reference to some confusion regarding Schuder's withdrawal, suggesting that he had erroneously been permitted to withdraw as counsel of record in July 2008 but was reappointed before withdrawing again in January 2009. But the record before us only reflects Schuder's appointment in late 2007 and his withdrawal in 2009 (though, as noted supra, the appointment form from 2007 inexplicably contains a handwritten notation of "reappointment").

Given the incomplete record and the scant findings of fact in support of the trial court's decision, we are constrained to remand so that the court can reconsider the circumstances giving rise to the delay and reassess the causes for the delay with regard to the principles outlined supra before reweighing this factor.[44]

(c) *Assertion of the Right to a Speedy Trial.* Although the filing of a speedy-trial demand is not "a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds,"[45] a defendant nevertheless has the responsibility to "assert the right to trial, and the failure to exercise that right is entitled to strong evidentiary

---

[41] *See id.* at 192 (2) (b) (trial court ignored allegation by defendant that "State was slow to comply with his discovery requests, which caused him to seek a continuance several months after . . . indict[ment]").

[42] *See id.*

[43] We also note that Johnson denied that such a hearing took place.

[44] *See supra* notes 30-42 & accompanying text.

[45] *Ditman*, 301 Ga. App. at 193 (2) (c) (punctuation omitted).

weight against the defendant."[46] In this regard, the "timing, form, and vigor of the accused's demands to be tried immediately should be considered in determining the weight given to the assertion-of-the-right factor."[47] Indeed, a defendant "may assert his constitutional right to a speedy trial at any time after he is arrested; he need not wait until indictment."[48]

And here, the trial court disposed of this factor by finding that "[w]hile the Defendant's counsel did not assert Defendant's right until the filing of this Motion, the Court recognizes that Defendant (not his counsel) attempted to assert his right by his ineffective filing of demands for speedy trial on December 6, 2007 and July 13, 2009." The trial court then cited our well-established case law that trial courts are authorized to find pro se demands of no legal effect when a criminal defendant is represented by counsel.[49] In finding that Johnson's pro se demands were ineffective, the trial court presumably weighed this factor against Johnson, which Johnson claims was in error.

It is well established that "[t]he Sixth Amendment right does not afford the defendant the hybrid right to simultaneously represent himself and be represented by counsel."[50] Thus, Johnson's July 13, 2009 motion was clearly ineffective because he was represented by appointed counsel at that time.[51] Likewise, Johnson's December 6, 2007 motion was ineffective because he was represented by counsel at the time the motion was filed.[52] Although we recognize that this

---

[46] *Simmons*, 304 Ga. App. at 43 (2) (c) (punctuation omitted); *see also Porter*, 288 Ga. at 528 (2) (c) (3) ("Our cases hold that an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant.").

[47] *Porter*, 288 Ga. at 528 (2) (c) (3) (emphasis and punctuation omitted); *see also Barker*, 407 U. S. at 531 (IV) ("The strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.").

[48] *Thaxton*, 311 Ga. App. at 267 (2) (c) (punctuation omitted).

[49] *See, e.g., Maddox v. State*, 218 Ga. App. 320, 321 (1) (461 SE2d 286) (1995) ("The trial court was clearly authorized to find that the pro se demand was of no legal effect whatsoever.").

[50] *Id.* (punctuation omitted); *see also Howard v. State*, 307 Ga. App. 822, 827-28 (2) (c) (706 SE2d 163) (2011) ("[T]his Court has repeatedly held that a pro se demand for a speedy trial filed while a criminal defendant is represented by counsel was of no legal effect whatsoever." (punctuation omitted)).

[51] Johnson urges us to adopt an exception for pro se motions that are filed when a criminal defendant's counsel is mistaken as to the law and incorrectly refuses to file a motion on the defendant's behalf. We decline to carve out such an exception and note that a criminal defendant has the option of making a claim for ineffective assistance of counsel when he or she believes that counsel's representation was deficient in any respect.

[52] *See Howard*, 307 Ga. App. at 827-28 (2) (c) (holding that defendant's pro se motions asserting right to speedy trial were ineffective because they were *filed* when defendant was represented by counsel).

may seem harsh or inequitable given the timeline surrounding Johnson's December 2007 attempt to assert his right,[53] the trial court nevertheless correctly weighed this factor against him.

(d) *Whether Defendant Suffered Prejudice.* In evaluating this final factor, "we consider three interests which the speedy trial right is designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and, most importantly, limiting the possibility that the defense will be impaired."[54] Of these considerations, the last has been deemed the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[55] And here, the trial court found that each consideration weighed in favor of the State.

(i) *Preventing Oppressive Pretrial Incarceration.* The trial court found that the first factor weighed in favor of the State because Johnson was incarcerated on other charges. Johnson contends that the trial court thereby erred. We agree, and the trial court must reconsider this interest on remand.

With regard to a defendant incarcerated on other charges, the Supreme Court of the United States has opined that a delay in bringing such a person to trial could aggravate and compound the three concerns of prejudice.[56] Specifically, the Supreme Court has suggested that "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed."[57] Additionally, "the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him."[58] Accordingly, the trial court erred by weighing this factor in favor of the State because Johnson was incarcerated on other charges, and the court must reevaluate this factor on remand.

(ii) *Minimizing Anxiety and Concern to the Defendant.* Because

---

[53] As further detailed *supra*, Attorney McFarland was appointed on November 21, 2007, but shortly thereafter informed Johnson that he would be unable to serve as counsel. On November 30, 2007, Johnson signed his demand for a constitutional speedy trial, which was filed by the clerk of court on December 6, 2007. Also on November 30, 2007, Gregg Schuder was appointed to represent Johnson, with the appointment form filed on December 5, 2007, and an entry of appearance filed on December 4.

[54] *Grizzard*, 301 Ga. App. at 617 (2) (d) (punctuation omitted).

[55] *Ruffin*, 284 Ga. at 65 (2) (iv) (punctuation omitted).

[56] *See Smith v. Hooey*, 393 U. S. 374, 378 (89 SC 575, 21 LE2d 607) (1969) (relating the three interests considered under the prejudice prong and holding that "[t]hese demands are both aggravated and compounded in the case of an accused who is imprisoned in another jurisdiction").

[57] *Id.*

[58] *Id.*

anxiety and concern are "always present to some extent," absent some unusual showing, this factor is not likely to be determinative in a defendant's favor.[59] And here, the trial court found that Johnson did not present sufficient evidence for this category to weigh in his favor. Johnson disagrees with the trial court's finding, arguing that his testimony regarding an "inability to obtain medical treatment and participate in programs for Department of Corrections inmates designed to assist in reducing incarceration time" was sufficient evidence of anxiety and concern. However, we agree with the trial court that Johnson failed to present "evidence that the delay caused him significant anxiety and concern beyond that generally experienced by defendants in his situation."[60]

(iii) *Limiting Possibility of Impaired Defense.* Johnson also argues that during the delay in bringing his case to trial, his girlfriend—who would have served as an alibi witness—passed away. According to Johnson, his deceased girlfriend would have testified to being with him on the night that the relevant crimes were committed. However, because it is undisputed that his girlfriend's son also saw Johnson that night and could present the same alibi testimony, the court found that this final interest weighed against Johnson.

To establish prejudice by an impaired defense, Johnson was required to "show that the missing witness could supply material evidence for the defense."[61] And it is well established that "[i]f witnesses die or disappear during a delay, the prejudice is obvious."[62] Although Johnson argues that testimony by his deceased girlfriend's son will be less credible due to the son only having stopped by when the girlfriend was with Johnson the entire night, the purported testimony would still present Johnson's alibi. Thus, to the extent that the trial court weighed this consideration in the State's favor because available testimony would be cumulative of the purported testimony by the missing witness, the trial court did not err.[63]

However, as additional support for its finding, the trial court

---

[59] *Ditman*, 301 Ga. App. at 195 (2) (d) (punctuation omitted).

[60] *Id.*; *see also Brewington v. State*, 288 Ga. 520, 524 (3) (b) (iv) (705 SE2d 660) (2011) (defendant's allegation that he suffered from anxiety and depression, missed his family, and could not participate in activities of a non-incarcerated person were insufficient to show prejudice arising to level violating constitutional rights).

[61] *Ditman*, 301 Ga. App. at 195 (2) (d); *see also Howard*, 307 Ga. App. at 829 (2) (d) ("To prove prejudice due to the unavailability of . . . witnesses, [the defendant] must show that the unavailable witnesses could supply material evidence for the defense." (punctuation omitted)).

[62] *State v. Redding*, 274 Ga. 831, 834 (561 SE2d 79) (2002) (punctuation omitted).

[63] *See Jackson v. State*, 244 Ga. 276, 277 (2) (260 SE2d 15) (1979) (holding that defendant was not prejudiced when missing eyewitness would have presented testimony cumulative of available witness); *Hughes v. State*, 228 Ga. 593, 595 (1) (c) (187 SE2d 135) (1972) (holding that defendant was not prejudiced when missing alibi witnesses would have presented testimony cumulative of available witnesses).

found that Johnson had failed to properly preserve an alibi defense. To the extent that the trial court weighed this factor in favor of the State/against Johnson because Johnson did not file a notice of intention to call an alibi witness, the trial court erred.

Pursuant to OCGA § 17-16-5, upon written demand by the prosecuting attorney, "the defendant shall serve within ten days of the demand . . . *or ten days prior to trial, whichever is later*, or as otherwise ordered by the court, upon the prosecuting attorney a written notice of the defendant's intention to offer a defense of alibi."[64] Johnson not having gone to trial, it was improper to hold that he had failed to preserve the use of an alibi witness.

(e) *Balancing the* Barker *Factors.* Because the trial court made factual findings that were unsupported by the record and misapplied the *Barker* factors, "the deference we owe to the trial court's ultimate ruling is diminished."[65] And given these errors, we cannot conclude that "the trial court would have still been required to weigh those factors in the manner in which it did, so as to determine that [Johnson's] right to a speedy trial had not been violated."[66] Indeed, "the trial court could not properly balance the *Barker* factors, and the trial court's order must be vacated and the case remanded for the trial court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order."[67]

Accordingly, for all the forgoing reasons, we vacate the trial court's judgment and remand the case for proceedings consistent with this opinion.[68]

*Judgment vacated and case remanded with direction. Mikell, P. J., and Boggs, J., concur.*

DECIDED FEBRUARY 3, 2012.

*Christopher W. Willis*, for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.

---

[64] OCGA § 17-16-5 (a) (emphasis supplied).
[65] *Davis v. State*, 308 Ga. App. 843, 847 (2) (e) (709 SE2d 343) (2011).
[66] *Id.*
[67] *Reimers*, 310 Ga. App. at 893 (3) (punctuation omitted).
[68] *See Porter*, 288 Ga. at 534 (2) (e) ("[T]he Court of Appeals should have vacated the order and remanded the case for the trial court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order."); *see also Reimers*, 310 Ga. App. at 893 (3); *Davis*, 308 Ga. App. at 848 (2) (e).