**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**May 10, 2012**

# In the Court of Appeals of Georgia

A12A0363. HILL v. THE STATE.

MILLER, Judge.

Charles Elliott Hill was indicted on two counts of violating the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO") (OCGA § 16-14-4 (b), (c)), four counts of subornation of false swearing (OCGA § 16-10-72), and one count of attempt to commit subornation of false swearing (OCGA §§ 16-4-1 & 16-10-72). Hill filed a motion to dismiss the indictment, alleging excessive pre-indictment delay and a violation of his speedy trial rights. The trial court denied Hill's motion, and Hill appeals. For the reasons that follow, we affirm.

"We review the trial court's denial of a motion to dismiss an indictment on speedy trial grounds for abuse of discretion and defer to the trial court's findings of

fact and its weighing of disputed facts. " (Punctuation and footnote omitted.) *Harrison v. State*, 311 Ga. App. 787 (717 SE2d 303) (2011).

The record shows that Hill was arrested and indicted on November 20, 2009. Hill was released on bond on or about November 25, 2009. At his arraignment on February 3, 2010, Hill requested additional time to file motions, and he was ultimately given until August 31, 2010, to file all motions. Hill filed two motions in April 2010 and filed the instant motion to dismiss on August 31, 2010.

The case next appeared on the trial calender on September 22, 2010, but both parties announced that they were not ready for a motions hearing or for trial. The trial court granted a continuance and ordered the parties to file notice of all leaves of absence and conflicts through December 31, 2010. Hill's counsel filed a notice that he would be on leave from November 8 through November 12 and December 3 through December 9, 2010. The State's prosecutor likewise filed notice that he would be on leave from November 8 through November 10, 2010; November 22 through November 25, 2010; and December 23 through December 31, 2010. The State's prosecutor also indicated that in 2011, he would be on leave from June 13 through June 17; June 20 through June 24; July 25 through July 27; and October 31 through November 4. Finally, Hill's lead counsel indicated that he would be unavailable,

either because of conflicts or leaves of absence, for the following periods in 2011:

March 28 through April 1; April 4 through April 8; April 11 through April 29; May 2 through May 6; May 16 through June 3; and June 4 through June 14.

The trial court held a hearing on Hill's motion to dismiss on June 15, 2011, and denied his motion on August 5, 2011. This appeal followed.

1. Hill contends that the trial court abused its discretion by denying his claim of pre-indictment delay, because the State delayed the prosecution of his case to gain a tactical advantage, and he sustained actual prejudice as a result. We disagree.

> The Sixth Amendment does not guarantee a right to a speedy arrest. However, an inordinate delay between the time a crime is committed and the time a defendant is arrested or indicted may violate due process guarantees under the Fifth and Fourteenth Amendments. To find a due process violation where a delay precedes arrest and indictment, courts must find 1) that the delay caused actual prejudice to the defense, and 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage. Both elements–actual prejudice and deliberate delay to gain a tactical advantage–must be established to find a due process violation.

(Citations and punctuation omitted.) *Billingslea v. State*, 311 Ga. App. 490, 492 (1) (716 SE2d 555) (2011); see also *Hill v. State*, 312 Ga. App. 12, 13 (1) (717 SE2d 523) (2011).

3

Here, Hill was arrested and indicted on November 20, 2009, for offenses that allegedly occurred between December 2005 and November 2006. The charges of RICO violations and subornation of false swearing have four-year statutes of limitations. OCGA §§ 16-14-4, 16-14-5 (a), 16-10-72, 17-3-1 (c). As a result, Hill was charged within the applicable statutes of limitations, which are "the primary guarantee against bringing overly stale criminal charges," and protects the defendant "from being tried for offenses when the basic facts may have become obscured by the passage of time." (Citation and punctuation omitted.) *Billingslea*, supra, 311 Ga. App. at 493 (2).

Hill contends that he was actually prejudiced by the three-year pre-indictment delay because his father, who was a potential defense witness, died during this period.[1] The evidence shows, however, that Hill's father died on July 15, 2010, about eight months after the indictment was returned. Even if Hill's father died during the period of pre-indictment delay, his death does not automatically amount to actual prejudice. See, e.g., *Manley v. State*, 281 Ga. 466, 467-468 (640 SE2d 9) (2007); *Hill*, supra, 312 Ga. App. at 13 (1). While Hill generally proffered that his father was

---

[1] Hill's claims are substantially similar to those previously raised and addressed in a prior appeal. See *Hill*, supra, 312 Ga. App. at 13-14 (1)-(2).

aware of the different issues underlying the criminal investigation and knew the people involved, Hill provided no further detail about what the anticipated testimony of his father would show nor did he establish how the testimony would have helped his defense. Consequently, Hill's proffer failed to establish that his defense was actually prejudiced from the absence of his father as a witness. See *Manley*, supra, 281 Ga. at 467-468 (the fact that a key defense witness died before the defendant's indictment, by itself, was not enough to demonstrate that the defendant would be denied a fair trial); *Billingslea*, supra, 311 Ga. App. at 493 (2) (the possibility that evidence would have assisted the defense does not establish actual prejudice).

Since Hill failed to demonstrate that the pre-indictment delay caused actual prejudice to his defense, we need not consider whether he delay was the result of the State's deliberate action to gain a tactical advantage. See *Hill*, supra, 312 Ga. App. at 14 (1). Accordingly, the trial court did not err in denying Hill's motion to dismiss based on pre-indictment delay. Id.

2. Hill also contends that the trial court should have granted his motion to dismiss the indictment based on the State's violation of his Sixth Amendment right to a speedy trial. We disagree.

When considering a motion to dismiss on speedy trial grounds, the trial court must conduct a two-part test as set forth in the United States Supreme Court decisions in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U. S. 647 (112 SCt 2686, 120 LEd2d 520) (1992). See *Stewart v. State*, 310 Ga. App. 551, 552-553 (713 SE2d 708) (2011).

> The first stage requires a determination of whether the interval from the defendant's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." Where the delay is only ordinary, rather than presumptively prejudicial, the defendant's speedy trial claim fails at the threshold. A delay that is deemed to be presumptively prejudicial, however, triggers the second stage of the analysis. At this second stage, a court must determine whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers the conduct of both the State and the defendant (i.e., the *Barker–Doggett* factors): (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test.

(Citations and punctuation omitted.) *Stewart*, supra, 310 Ga. App. at 552-553.

(a) *Presumptive Prejudice*. Hill contends that the pre-trial delay was presumptively prejudicial.

6

"Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." (Citation and punctuation omitted.) *Stewart*, supra, 310 Ga. App. at 553 (1). Here, the trial court incorrectly determined that the delay was approximately 19 months, starting from the date Hill was indicted on November 20, 2009, and ending on the date the court considered Hill's motion to dismiss on June 15, 2011. The relevant period, however, ended on August 5, 2011, the day the trial court denied Hill's motion to dismiss. See *Stewart*, supra, 310 Ga. App. at 553 (1) (concluding that the relevant interval was the time that elapsed between the defendant's arrest and the trial court's denial of the defendant's motion to dismiss). Consequently, the actual delay was approximately 21 months. Nevertheless, the trial court correctly found that the delay was presumptively prejudicial. See *Hayes v. State*, 298 Ga. App. 338, 340 (1) (680 SE2d 182) (2009) (a pretrial delay exceeding 12 months is presumptively prejudicial). Therefore, we proceed to review the trial court's findings with respect to the second stage of the *Barker-Doggett* analysis. See *Johnson v. State*, __ Ga. App. __, *3 (1) (Case No. A11A2220, decided Feb. 3, 2011) (while the trial court miscalculated the length of the delay by two months, it correctly found that the delay was presumptively prejudicial and proceeded to the second-stage analysis).

2. *Barker-Doggett Analysis*

(a) *Whether the pretrial delay was uncommonly long.*

> While the length of delay plays a role in the threshold determination of presumptive prejudice, it is also considered as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis. . . . [I]t is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage[.]

(Punctuation and footnotes omitted.) *Johnson*, supra, __ Ga. App. at *3 (2) (a).

Here, there is nothing in the trial court's order demonstrating that it considered whether the 21-month pretrial delay was uncommonly long given the circumstances of the case. "To the extent the trial court overlooked this factor in the four-factor balancing process, it erred." (Citation omitted.) *Teasley v. State*, 307 Ga. App. 153, 158 (2) (a) (704 SE2d 248) (2010). The 21-month delay in this case "approaches that which has been held to be 'deplorable,' and at least with respect to the duration, such delay must be weighed against the State." (Punctuation and footnote omitted.) *Simmons v. State*, 304 Ga. App. 39, 41 (2) (a) (696 SE2d 75) (2010).

2. *Reasons and responsibility for the delay.* Under the second *Barker-Doggett* factor, the trial court is required to examine both the reason for the delay and whether the delay was attributable to the defendant or to the State. See *Stewart*, supra, 310 Ga.

8

App. at 554 (2) (b). Since "some amount of pretrial delay is unavoidable, the reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors." (Punctuation and footnote omitted.) *Johnson*, supra, ___ Ga. App. at *4 (2) (b).

> Deliberate delay to hamper the defense weighs heavily against the prosecution. More neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. In contrast, delay caused by the defense weighs against the defendant.

(Citation and punctuation omitted.) *Robinson v. State*, 287 Ga. 265, 267 (1) (b) (695 SE2d 201) (2010).

Here, the trial court determined that Hill and the State were both responsible for the 21-month delay, and the record evidence supports the trial court's finding. Significantly, Hill was given almost seven months from the date of his February 3, 2010 arraignment to file additional motions. After Hill filed the instant motion to dismiss on August 3, 2010, his lead counsel was unavailable for a total period of approximately three months – one week in November 2010; one week in December 2010; one week spanning the end of March and the beginning of April 2011; all of April 2011; all of May 2011; and two weeks in early June 2011. See, e.g., *Stewart*,

9

supra, 310 Ga. App. at 555 (2) (b) (delay partially caused by attorney's multiple leaves of absence were attributable to the defendant); *Howard v. State*, 307 Ga. App. 822, 826 (2) (b) (706 SE2d 163) (2011) (delay partially caused by counsel's unavailability is attributable to the defendant). Consequently, Hill was responsible for approximately ten months of the delay.

With respect to the remaining delay, the record reveals that the State's prosecutor was unavailable for approximately one month between the time Hill filed his motion to dismiss on August 31, 2010, and the date of the hearing on the same on June 15, 2011. Additionally, the trial court took two months from the date of the hearing to issue its order denying Hill's motion to dismiss. While the reason for this two-month delay were not evident from the record, the trial court explained that much of the overall delay was necessitated by the trial court's overcrowded docket and inability to reassign the case to a senior judge for expedited handling due to budgetary constraints. See *Teasley*, supra, 307 Ga. App. at 159 (2) (b) (unintentional delays caused by overcrowded court dockets are weighed against the State); *Johnson*, supra, ___ Ga. App. at *4 (2) (b) ("[W]hen there is no apparent reason for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial.") (punctuation and footnote omitted).

10

Notwithstanding Hill's claims otherwise, there is no evidence that the State deliberately delayed the trial in an effort to gain a tactical advantage.[2] In fact, the record shows that the State repeatedly indicated that it was proceeding with the prosecution, because it filed three motions between June 2010 and March 2011, requesting that the trial court set a specific date for a motions hearing or for trial. Since the record supports the trial court's finding that Hill and the State were equally responsible for the pre-trial delay, the trial court did not err in concluding that this *Barker-Doggett* fact was ultimately neutral. See *Robinson*, supra, 287 Ga. at 268 (1) (b) (where both parties are to blame for delay, second Barker-Doggett factor remains neutral).

(c) *Assertion of the Right*.

It is the responsibility of the defendant to assert his right to a speedy trial, and his failure to do so in a timely manner weighs strongly against him. Indeed, the failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. This factor weighs

---

[2]Although Hill contends that the State deliberately delayed prosecuting his case since it knew of the alleged offenses in 2007 and waited until 2009 to indict him, any delay that preceded his arrest is not relevant to a Sixth Amendment speedy trial analysis. Cf. *Hill*, supra, 312 Ga. App. at 13 (recognizing that pre-arrest, pre-indictment delay raises due process concerns under the Fifth and Fourteenth Amendment, while delay after arrest or indictment possibly implicates Sixth Amendment speedy trial protections). As discussed in Division 1 above, there is no merit to Hill's claim that the pre-arrest delay violated his due process rights.

especially strongly against a defendant where he has been represented by counsel since soon after his arrest but does not assert his right to a speedy trial until just before trial.

(Citations and punctuation omitted.) *Howard*, supra, 307 Ga. App. at 827 (2) (c).

Here, Hill secured counsel shortly after his arrest on November 20, 2009. Hill never filed a demand asserting his statutory right to a speedy trial under OCGA § 17-7-170, and he raised his constitutional right to a speedy trial for the first time in his August 31, 2010 motion to dismiss. Since Hill requested an extension of approximately seven months to file motions in his case, and waited until the last day of the trial court's extended deadline to raise the speedy trial claim, the trial court found that the delay in asserting his speedy trial right was a factor to be weighed against Hill. Based on these circumstances, we conclude that the trial court did not err in this respect. See *Bell v. State*, 287 Ga. App. 300, 302 (651 SE2d 218) (2007) (the trial court was authorized to weigh against the defendant his failure to assert his speedy trial right until 10 months after his indictment).

(d) *Prejudice to the Defendant.* In evaluating the final *Barker-Doggett* factor, we consider three types of prejudice normally associated with an unreasonable delay before trial: oppressive pretrial detention; anxiety and concern of the accused; and the possibility that the accused's defense will be impaired. *State v. Porter*, 288 Ga. 524,

12

529 (2) (c) (4) (705 SE2d 636) (2011). Of these three types of prejudice, the last is the most serious because the inability of the defendant to adequately prepare his defense affects the fairness of the justice system. Id.

Notwithstanding Hill's contention otherwise, the first three *Barker-Doggett* factors did not weigh heavily against the State, and therefore, we must consider whether Hill suffered actual prejudice. See *Hayes*, supra, 298 Ga. App. at 347 (2) (d) ("[W]hether a defendant needs to show particularized prejudice depends upon an evaluation of the first three factors in balancing test, and whether those factors weighed against the government."). Furthermore, Hill's contention that this case gives rise to a presumption of actual prejudice based on substantial delay is without merit. While the 21-month delay in this case was presumptively prejudicial, this presumptive prejudice cannot alone carry Hill's speedy trial claim without regard to the other *Barker-Dogett* factors. See *Stewart*, supra, 310 Ga. App. at 558 (2) (d).

Aside from the presumptive prejudice that arose in this case, however, and as the trial court found, Hill made no showing of any actual prejudice. Significantly, the record supports the trial court's finding that there was no oppressive pretrial incarceration, because Hill was released from custody on bond shortly after his arrest and indictment on November 20, 2009. See *Green v. State*, 295 Ga. App. 468, 471 (6)

13

(672 SE2d 414) (2008) (no oppressive incarceration where the defendant was out on bond for the period of delay). Hill also made no showing of unusual anxiety and concern arising out of the delay. See id.

While Hill argued that the delay impaired his defense since his father was no longer available to testify, he needed to present specific evidence showing "that the unavailable witness could supply material evidence for the defense." (Citation and punctuation omitted.) *Higgins v. State*, 308 Ga. App. 257, 262 (2) (d) (707 SE2d 523) (2011). However, as discussed in Division 1 above, Hill made no proffer as to what his father would have specifically testified about, why that testimony would have been favorable to Hill, or why that testimony would not have been cumulative of other witnesses available to Hill. See, e.g., *Porter*, supra, 288 Ga. at 530 (2) (c) (4) (the purported death of a close family member did not establish actual prejudice where there had been no sufficient proffer of the absent witness's testimony, why such testimony was favorable to the defense, or why such testimony would not have been cumulative); *Christian v. State*, 281 Ga. 474, 478 (2) (640 SE2d 21) (2007) (defendant failed to show prejudice where she did not demonstrate that a missing witness would have provided testimony favorable and relevant to her defense); *Higgins*, supra, 308 Ga. App. at 263 (2) (d) (defendant failed to meet burden of

14

establishing prejudice where he stated only that the unavailable witness would have contradicted the victim's version of events without specifying what the victim's testimony would be). Consequently, Hill failed to substantiate the presumptive prejudice arising from the delay, and the trial court properly weighed this last *Barker-Doggett* factor against Hill. See *Higgins*, supra, 308 Ga. App. at 263 (2) (d) (defendant's failure to provide specific evidence of prejudice weighed against him).

(e) *Barker-Doggett Balancing Test*.

"A trial court exercises substantial discretion in applying the *Barker*[-*Doggett*] balancing test, and its ultimate judgment is reviewed on appeal only for abuse of that discretion." (Citation and punctuation omitted.) *Porter*, supra, 288 Ga. at 533 (2) (e). Nevertheless, "where the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." (Citation and punctuation omitted.) Id.

While the trial court failed to consider the length of the delay separately from the threshold presumptive prejudice analysis, the trial court properly found that the reason for the delay was neutral based on each party's role in contributing to the delay. The trial court also properly weighed Hill's delay in asserting his right to a speedy trial in light of the extended period he was given to file all motions. Finally,

although there was a presumption of prejudice based on the length of the delay, the trial court correctly determined that Hill failed to substantiate this presumption with any evidence of actual prejudice. Consequently, "[a]lthough the trial court's analysis was somewhat [incomplete], and therefore our deference to the trial court diminished, we cannot say in this case [for certain] that the trial court abused its discretion by denying [Hill's] motion to dismiss." (Citations and punctuation omitted.) *Stewart*, supra, 310 Ga. App. at 561 (2) (e).

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*